Max W. **FORSYTHE,** Helen H. Forsythe, E. Bush Hayden and Jean Mulliken, Plaintiffs-Appellees,

v.

**D. H. OVERMYER, Defendant-Appellant.**

**Nos. 75–2855 and 76–1780.**

United States Court of Appeals, Ninth Circuit.

April 17, 1978.

Rehearing and Rehearing En Banc Denied June 16, 1978.

---

Frank M. Kaplan (argued), of Schwartz, Alschuler & Grossman, Los Angeles, Cal., for defendant-appellant.

Jerome Sapiro, Jr. (argued), of Cullinan, Burns & Helmer, San Francisco, Cal., for plaintiffs-appellees.

Before WRIGHT and TANG, Circuit Judges, and THOMPSON, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Defendant appeals from a judgment for plaintiffs who sued to recover on a personal guaranty. Appellant Overmyer, a New York resident, was chairman of the board and sole stockholder of D. H. Overmyer, Inc. (Ohio) [hereafter Ohio, Inc.], an Ohio corporation. Ohio, Inc., in turn, was the 100% owner of D. H. Overmyer, Inc. (Oregon) [hereafter Oregon, Inc.], an Oregon corporation. Appellant also was the chairman of the board and the chief executive officer of Oregon, Inc. His guaranty of certain obligations of Oregon, Inc. was the subject of the suit.

## OPINION

### I.

### FACTS

Plaintiffs learned from a California real estate broker that a warehouse in Oregon, owned by Oregon, Inc., was available for sale and lease back. Forsythe indicated some interest in it.

For several days, Forsythe and his attorney met with J. R. Fitzsimmons, an attorney and assistant secretary of Ohio, Inc., parent of Oregon, Inc. As a condition of the proposed purchase and lease, Forsythe insisted that Overmyer personally guarantee performance of Oregon, Inc.'s obligations as lessee. Fitzsimmons telephoned Overmyer in New York to inform him of Forsythe's insistence on a personal guaran-

ty. Overmyer responded by telegram from New York to Forsythe in California, confirming his willingness to give the guaranty. Overmyer then executed the guaranty and forwarded it by mail to Forsythe.

The lease, but not the guaranty, provided that it would be subject to the jurisdiction of California courts and that California law would govern. Oregon, Inc. failed in its obligations as lessee. Late in 1973, Ohio, Inc., along with its numerous subsidiaries, including Oregon, Inc., filed petitions in bankruptcy under Chapter XI. Virtually all Overmyer corporations were in substantial arrears to landlord purchasers.

In October, 1973 plaintiffs sued on the guaranty[1] and, after Overmyer's motion to dismiss for lack of personal jurisdiction was denied, the case went to trial.[2] The court granted judgment for plaintiffs, for $90,-618.17, with 7% interest from the date of judgment and attorney's fees of $11,796.38. On appeal, Overmyer challenges the jurisdiction of the district court.

### II.

### NO. 75–2855

#### A. *Jurisdiction.*

Plaintiffs have the burden to establish jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936). Upon a motion to dismiss for lack of personal jurisdiction, the burden varies according to the nature of the pre-trial proceedings in which the jurisdictional question is decided. *Data Disc, Inc. v. Systems Tech. Assoc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Whatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence.

---

* Hon. Bruce R. Thompson, of the District of Nevada.

1. In a suit against Oregon, Inc., an Oregon state court awarded plaintiffs a judgment for rent, property taxes, interest and attorneys' fees.

2. Trial was to the court on affidavits.

■ The jurisdictional inquiry involves a two-step analysis. First, we see if any statute of the state in which the district court sits confers personal jurisdiction over appellant. *See* Fed.R.Civ.P. 4(e). Next, we ascertain whether the state's assertion of jurisdiction accords with principles of due process.

The applicable California statute is § 410.10 of the California Code of Civil Procedure.[3] It has been interpreted to provide that the limits on the jurisdiction of the state's courts are "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d at 1286 (citations omitted). Thus, the usual two-step analysis collapses into a single search for the outer limits of what due process permits. *Cf. Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 788–89 (9th Cir. 1977).

■ A series of decisions, beginning with *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), defines the limitations on a state's power to assume *in personam* jurisdiction over an out-of-state defendant. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). A defendant must have such "minimal contacts" with the forum that maintenance of the suit will not offend traditional notions of fair play and substantial justice. *Data Disc, Inc.*, 557 F.2d at 1287, *citing International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. 154.

■ When a defendant has "substantial" forum-related activities, he may be subject to the forum state's jurisdiction even as to a suit arising from activities unrelated to the forum. But when his activities are not sufficiently pervasive to support general jurisdiction, the inquiry must turn to an evaluation of his forum-related activities as they relate to the specific cause of action.

■ Because defendant did not have enough contact with California to support general jurisdiction over him,[4] we must evaluate his contact with the state in his role as guarantor of Oregon, Inc.'s obligations.[5] This circuit has adopted the following analytical approach to that evaluation:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc, Inc.*, 557 F.2d at 1287 (citations omitted).

The question is whether Overmyer, by guaranteeing the corporation's obligations as lessee of the Oregon warehouse, personally availed himself of the privilege of conducting activities in California so as to invoke the benefits and protections of its laws. In answering the question, we view the facts with a common sense perspective

3. Cal.Code Civ.Proc. § 410.10:
   A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

4. Overmyer's contacts with the forum cannot be fairly characterized as so "substantial" or "continuous and systematic" as to render him generally amenable to the jurisdiction of the California courts. *Data Disc, Inc.*, 557 F.2d at 1287.

5. Courts have recognized that under California's longarm statute and the due process clause, a defendant may be subject to Califor-

nia jurisdiction when he has caused an effect in that state by an act or omission elsewhere. *Quattrone v. Superior Court*, 44 Cal.App.3d 296, 303, 118 Cal.Rptr. 548, 552 (1975); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Jurisdiction properly rests on the "effects" rationale "unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." *Sibley v. Superior Court*, 16 Cal.3d 442, 446, 128 Cal. Rptr. 34, 36, 546 P.2d 322, 324 (1976) (emphasis deleted).

and evaluate carefully the fundamental fairness of the challenged jurisdictional exercise in light of the facts.

While we have attempted carefully to organize the various legal theories which may be derived from plaintiffs' arguments and the case law in this area, it must be cautioned that questions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 789 (9th Cir. 1977); *Wright v. Yackley*, 459 F.2d 287, 290–91 & n.7 (9th Cir. 1972); *Gardner Eng'r. Corp. v. Page Eng'r. Co.*, 484 F.2d 27, 30–31 (8th Cir. 1973); *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723, 725 (5th Cir.), cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973). *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 420, 426 (9th Cir. 1977).

The sale-lease contract between plaintiffs and Oregon, Inc. was negotiated in California, and expressly was subject to interpretation under California law by California courts. Overmyer was not a party to it. He did, however, guarantee Oregon, Inc.'s obligations under it. The guaranty, a separate contract between different parties, was requested as a condition of plaintiffs' assent to the sale-lease agreement. At their request, attorney Fitzsimmons called Overmyer who agreed in his personal capacity to guarantee the corporation's obligations.

Although the primary negotiations were between plaintiffs and the corporation, Overmyer participated personally to secure a benefit for his corporation and, indirectly, himself.

An out-of-state act having an effect within the state may be sufficient to support jurisdiction and in such a case we must be particularly careful to assure that the exercise of jurisdiction is reasonable. "The degree to which a defendant interjects himself into the state affects the fairness of subjecting him to jurisdiction." *Data Disc, Inc.*, 557 F.2d at 1288 (citations omitted).

Overmyer, through Fitzsimmons, interjected himself into the transaction by assuming personal liability in the event of default on a contract expressly subject to jurisdiction in the California forum. The guaranty was part of the negotiating strategy in California.[6]

■ The courts generally respect corporate boundaries in jurisdictional contexts. We held recently that where "[n]othing in the record indicates that the formal separation between parent and subsidiary is not scrupulously maintained[,] . . . the activities of the parent are irrelevant to the issue of jurisdiction over the absent subsidiary." *Uston v. Grand Resorts, Inc.*, 564 F.2d 1217, 1218 (9th Cir. 1977) (citations omitted). *See also Mizokami Bros. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977). Moreover, a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that

---

**6.** To place the facts of this case in context, and to explain further the fundamental fairness of finding jurisdiction over Overmyer, we note that this dispute does not arise from a single, isolated transaction.

Between 1969 and 1973 Overmyer visited California an average of twice a year to meet with general managers and vice-presidents of his California subsidiaries and to review their operations. Overmyer's corporations listed the California warehouses for sale and lease-back with a real estate brokerage firm, Fox & Carskaden, Inc., in Menlo Park, California, and these brokers negotiated sales and lease-backs of at least thirteen Overmyer warehouses to California residents. D. H. Overmyer, pursu-

ant to the above-described course of business, personally guaranteed performance of his corporations' obligations to ten California residents. Between 1968 and 1973, D. H. Overmyer personally met with the above-named brokers in California several times in connection with the negotiation of these sales and lease-backs. These brokers are the same ones who negotiated the sale and lease-back of the Oregon warehouse involved in this case.

We recognize that a share of Overmyer's California contacts were made in his capacity as a corporate officer. But we note that he regularly involved himself personally in his corporations' ventures by giving his personal guaranty for corporate obligations.

forem. *See Chem Lab Products, Inc. v. Stepanek,* 554 F.2d 371 (9th Cir. 1977).

■ To affirm the finding of jurisdiction in this case, however, does not require that we dismantle the corporate structure. While Overmyer could have remained behind the multiple veils of his complex business organization, he chose not to do so. As a fair result of that considered business decision, he became subject to jurisdiction in California.[7]

B. *Other Alleged Errors.*

■ Overymer's other allegations of error are insubstantial. Having failed to argue the point at trial, he may not object to Forsythe's alleged lack of standing to sue. We note, however, that the persons to whom Forsythe assigned his interests in the lease were properly joined as parties plaintiff. The trial judge held that the appellant had not sustained his burden to prove that plaintiff had a duty to mitigate damages or had failed to do so under the terms of the lease. The record indicates that his conclusion was correct.

### III.

#### NO. 76–1780

In a companion appeal Overmyer challenges the district court's orders directing him to answer post judgment interrogatories and to post a supersedeas bond pending appeal. He has answered the interrogatories and our decision in No. 75–2855 renders relief from the bond requirement unnecessary. The issues in the second appeal have become moot.

### IV.

#### CONCLUSION

The judgment of the district court is affirmed. The appeal in No. 76–1780 is dismissed for mootness.

7. It would defeat reason and common sense to hold that service of process must be quashed simply because Overmyer remained in New York and sent a telegram promising the guaranty, and later the guaranty itself, to the plaintiffs in California or because the guaranty was executed at the request of the plaintiffs.

The guaranty transaction was intimately bound up with the California-based negotiations and Overmyer must have expected, in light of his previous experiences, that the plaintiffs might request a personal guaranty from him as part of the transaction. See note 6, *supra.*