The CITY OF SPRINGFIELD, a municipal corporation, acting By and Through the SPRINGFIELD UTILITY BOARD, Plaintiff,

v.

WASHINGTON PUBLIC POWER SUPPLY SYSTEM, a Washington municipal corporation; City of Eugene, Bonneville Power Administration, an agency of the United States Government; Peter Johnson, Administrator of the Bonneville Power Administration, et al., Defendants.

Civ. No. 82–1387–RE.

United States District Court,
D. Oregon.

March 15, 1983.

Peter R. Mersereau, Rankin, McMurry, VavRosky & Doherty, James H. Clarke, Edwin A. Harnden, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Charles H. Turner, U.S. Atty., Jack G. Collins, Thomas C. Lee, Asst. U.S. Attys., Portland, Or., Paul A. Gaukler, Civ. Div., Dept. of Justice, Washington, D.C., Douglas M. Ragen, John F. Neupert, William H. Walters, Miller, Nash, Yerke, Wiener & Hager, Portland, Or., Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, Tacoma, Wash., Thomas S. Moore, Stephen S. Walters, Stoel, Rives, Boley, Fraser & Wyse, William F. Martson, Tonkon, Torp, Galen, Booth & Marmaduke, James T. Waldron, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., Robert L. Ackerman, Springfield, Or., Frank Hilton, Jr., Schwab & Hilton, Robert M. Kerr, William G. Sheridan, Jr., Tooze, Kerr, Marshall & Shenker, Donald J. Lukes, Brophy & Lukes, Portland, Or., John D. Lowery, Gordon Wilcox, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., liaison counsel appointed by the Court.

## OPINION

REDDEN, District Judge:

This is a declaratory judgment action brought by the city of Springfield, Oregon, against the Washington Public Power Supply System (WPPSS), the Bonneville Power Administration (BPA), and over a hundred utilities and cities in Oregon, Washington, Wyoming, Idaho, Montana and Nevada. This litigation stems from contracts, commonly known as "net billing agreements," entered into by BPA, WPPSS, and the named utilities, including plaintiff. Those contracts relate to construction of three nu-

clear plants, WPPSS plants 1, 2 and 3, and the allocation of power from those plants after their completion. Plaintiff seeks a declaration that it had lawful authority to enter into the net billing agreements. Plaintiff alleges that uncertainty has arisen on this issue, and that that uncertainty has been increased by the decision in *DeFazio v. WPPSS,* Lane County Circuit Court No. 16–81–11344,[1] which held that certain utilities lacked authority to enter into contracts concerning WPPSS plants 4 and 5. Plaintiff is also a participant in the Trojan nuclear plant in Rainier, Oregon, which has already been completed. Plaintiff argues that there is uncertainty concerning the participation agreement which it signed in order to take part in the Trojan project.

BPA and other federal defendants have filed a cross-claim in this litigation. For purposes of the cross-claim the federal agencies and officers appear as plaintiffs pursuant to 28 U.S.C. § 1345 and 16 U.S.C. § 832k(b). The cross-claim seeks a declaration that all participants had lawful authority to enter into the net billing agreements.

Certain defendants now move to dismiss under Fed.R.Civ.Pro. 12(b). The movants assert, first, a lack of federal subject matter jurisdiction over this suit. Next, movants assert that there is no justiciable controversy among these parties. Finally, certain out-of-state defendants move to dismiss on the grounds of lack of personal jurisdiction over them, or improper venue.

*Federal Statutory Jurisdiction*

■ This suit is properly brought in federal court. Plaintiff seeks to ground jurisdiction in 28 U.S.C. § 1331, by alleging that its action against a federal agency concerning its contracts requires the application of federal common law, which indicates that this action "arises under" federal law. Plaintiff is correct. When federal common law governs an action, the action "arises under" federal law for purposes of 28 U.S.C. § 1331. *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). Federal common law governs this case, because it is an action against the federal government which could have an impact upon the federal treasury and in which there is an urgent need for the application of a uniform rule. *United States v. Seckinger,* 397 U.S. 203, 209–210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *see also United States v. Allegheny County,* 322 U.S. 174, 183, 64 S.Ct. 908, 913, 88 L.Ed. 1209 (1944); *Ghent v. Lynn,* 392 F.Supp. 879, 881–882 (D.Conn.1975); *Marcus Garvey Square v. Winston Burnett Const.,* 595 F.2d 1126, 1132 (9th Cir.1979) (Dictum).[2]

---

1. *DeFazio* has been appealed to the Oregon Court of Appeals. A case raising similar issues, *Chemical Bank v. WPPSS, et al.,* No. 82–2–06840–3 (King Co., Wash.Super.Ct., 1982), is now before the Supreme Court of Washington.

2. The United States is liable under the net billing agreements if any party to this action is found not to have had authority to enter into them. The impact upon the federal treasury from this litigation could potentially be immense. This distinguishes the case of *Miree v. DeKalb County,* 433 U.S. 25, 29–30, 97 S.Ct. 2490, 2493–2494, 53 L.Ed.2d 557 (1977), relied upon by movants. *Miree* was a case in which the federal government had no stake in the outcome; it was simply an action between private litigants. *Id.* at 29–30, 97 S.Ct. at 2493–2494. Thus there was no need for the fashioning of a uniform federal rule. *Id.* In the present case there is a crying need for such uniformity. At this writing a court in Washington has upheld the authority of Washington utilities to enter into such contracts, while a court in Oregon has come to a contrary result as to Oregon utilities. If those decisions are upheld on appeal, the federal government will be potentially liable for the shares of the Oregon participants, but not the Washington participants. Such a result would be absurd and would allow the federal treasury's exposure to turn upon state law in a manner inconsistent with the doctrine of *Clearfield Trust, supra; see Id.,* 318 U.S. at 367, 63 S.Ct. at 575. Movants also rely upon *Karlin v. Clayton,* 506 F.Supp. 642, 645–646 (D.Kan.1981), which appears to be confined to the murky area of misrepresentations in armed forces recruiting endeavors. *Karlin* may not be consistent with the *Clearfield Trust* doctrine and in any case is confined to its own facts. On the facts of the present case, federal common law applies.

■ In addition, I clearly have jurisdiction over the cross-claim of the United States, *see* 28 U.S.C. § 1345:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

Thus I have jurisdiction over the cross-claim of the BPA, which seeks declaratory relief similar to that sought by plaintiff. The course of this litigation will not be affected, whether I assert jurisdiction over only the cross-claim or the entire controversy. However, I find that I have jurisdiction over all claims in this controversy.[3] Therefore I will deny the movants' motions to dismiss for lack of federal subject matter jurisdiction.

*Justiciability*

■ Movants assert that there is no real controversy in this case, and that plaintiff and the federal defendants merely seek an advisory opinion as to their rights. It is true that the mere styling of this action as one seeking a declaratory judgment does not indicate that the matter is justiciable; it is "essential to the maintenance of a declaratory relief action that there be an actual controversy in existence." *Garcia v. Brownell,* 236 F.2d 356, 357 (9th Cir.1956), *cert. denied,* 362 U.S. 963, 80 S.Ct. 880, 4 L.Ed.2d 878 (1960). "Basically, the question in each case is whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers Asso. v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972), *quoting Maryland Cas. Co. v. Pacific*

*Coal,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). When all parties to an action "desire precisely the same result," it is clear that jurisdiction is lacking. *Moore v. Charlotte-Mecklenburg Bd. of Ed.,* 402 U.S. 47, 48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971).

In the present case three defendants originally denied the validity of the net billing agreements. After briefing of jurisdictional issues began and the justiciability problem became clear, all three filed motions to amend their answers to drop claims of the invalidity of the net billing agreements and thereby defeat federal jurisdiction.

■ The motions for leave to amend will be denied. I find that final ruling on the justiciability of this suit is premature. Many of the defendants have avoided a direct answer to the issue in suit, by answering only that plaintiff "contends" the contracts are valid. It is apparent that certain litigants, taking advantage of the court's scheduling of the motions to dismiss prior to the summary judgment motions on the merits, merely seek to avoid adjudication through artful pleading, without conceding their positions on the merits. In addition, many parties have not answered the cross-claims of the federal parties, or have given evasive answers. I find that a decision on the justiciability of this action must await the litigation of the merits of the controversy, which will have the effect of determining whether the parties are in fact adverse enough to support federal jurisdiction. I certainly have jurisdiction to determine jurisdiction, *see United States v. United Mine Workers,* 330 U.S. 258, 291–293, 67 S.Ct. 677, 694–695, 91 L.Ed. 884 (1947), and I therefore order that justiciability will be determined after all memoran-

---

**3.** In order to remove any doubt on this point, I hold alternatively that I have jurisdiction over the cross-claim under 28 U.S.C. § 1345 and assert pendent jurisdiction over the plaintiff's claim in order to dispose of this controversy in one action, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The United States is clearly acting in its capacity as a plaintiff in bringing its cross-claim pursuant to 28 U.S.C.

§ 1345, and thus I have jurisdiction over this controversy in any event, *see United States v. State of Illinois,* 454 F.2d 297, 301 (7th Cir. 1971). It is also clear that retention of jurisdiction solely over the cross-claim, which would have the same effect, would be proper, *Pioche Mines Consol. v. Fidelity-Philadelphia,* 206 F.2d 336, 337 (9th Cir.1953), but I find adjudication of all aspects of this controversy will serve important ends of judicial economy.

da on the merits are filed. Only then can it be determined whether all parties "desire precisely the same result," such that there would be nothing left to litigate.

*Personal Jurisdiction*

Certain out-of-state movants also assert that personal jurisdiction over them is lacking, in that their contacts with Oregon are insufficient to support jurisdiction in this court.

Plaintiff and the federal parties, however, assert that the movants' execution of net billing agreements and other power contracts with BPA, which is of course located in Oregon, subjects the movants to jurisdiction in Oregon courts. In deciding this motion I of course apply the Oregon rules on personal jurisdiction, *see* Fed.R.Civ. Pro. 4(e); ORCP 4(A)–(L).

I agree with the movants that their execution of one contract with an Oregon entity is not such "substantial and not isolated" activity as to subject the movants to suit in Oregon under ORCP 4(A)(4). However, the same is not true with respect to ORCP 4(L), which grants jurisdiction "in any action where prosecution of the action against a defendant in this state is not inconsistent with the constitution of this state or the Constitution of the United States." There is no argument asserted against jurisdiction based upon the Oregon Constitution, and thus the question before me is whether jurisdiction over these defendants is consistent with federal due process, *see Data Disc, Inc. v. Systems Tech. Assn.,* 557 F.2d 1280, 1287 (9th Cir.1977); *Forsythe v. Overmyer,* 576 F.2d 779, 782–783 (9th Cir.1978), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). I find that movants are subject to such jurisdiction.

Movants executed contracts[4] with an Oregon entity, BPA, and should reasonably have anticipated being sued in Oregon on those contracts. The present suit arises out of the execution of those contracts. The movants interjected themselves into this forum by receiving the benefits of doing business here. The exercise of such jurisdiction is clearly reasonable. *See Data Disc, supra* at 1287–1288. I deny the motions to dismiss for lack of personal jurisdiction. Venue is also proper in this district under 28 U.S.C. § 1391(e), which directs that suit against a federal agency be brought in a district in which the agency is found or defendant resides. BPA and the other federal parties are residents of this district. In addition, the claim "arose" in this district, *see Data Disc, supra* at 1289–1290, for purposes of 28 U.S.C. § 1391(b).

4. Not all movants are parties to the net billing agreements, although all are parties to contracts of some sort with BPA. Whether these contracts are net billing agreements, participation agreements, or ownership agreements is not relevant to my analysis.