John M. TWEET, Donna P. Tweet, Danniele Middleton and David Middleton, Plaintiffs,

v.

Raymond A. WEBSTER, California State Automobile Association, and Farmers Insurance Exchange, Defendants.

No. CV–R–84–47–ECR.

United States District Court, D. Nevada.

Sept. 21, 1984.

G.C. Backus, Reno, Nev., for plaintiffs.

David R. Grundy, Hibbs, Roberts, Lemons & Grundy, Reno, Nev., for Farmers Ins. Exchange.

Bruce R. Laxalt, Beckley, Singleton, DeLanoy & Jemison, Reno, Nev., for California Auto. Ass'n and Raymond A. Webster.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

This is a diversity action. The complaint alleges that plaintiffs (Tweets) are residents of Nevada and that the defendant Raymond A. Webster (Webster) is a resident of Portola, California.

Webster has made a motion to quash service of process for lack of personal jurisdiction.

The complaint alleges the following: On or about February 18, 1983, in Portola, California, Webster, while making an unlawful u-turn, negligently and carelessly ran his automobile into the automobile driven by John M. Tweet. His wife Donna P. Tweet was a passenger along with her children, Danniele Middleton, age 9, and David Middleton, age 11. The Tweets carried automobile insurance with Farmers Insurance Exchange at the time of the accident. Webster carried automobile insurance with California State Automobile Association (CSAA). The defendants, Farmers Insurance Exchange and CSAA are California corporations which have their principal places of business in California.

In opposing the motion to quash, the Tweets allege that defendant Webster's contacts with Nevada are: (1) He was once employed in Nevada's casinos; (2) The insurance company acting on Webster's behalf chose to negotiate and adjust the automobile claims (arising from the accident) in Reno.

According to the complaint, the acts of the insurance companies in negotiating the automobile claims were:

1. CSAA conspired with Farmers Insurance Exchange to breach the Tweets' insurance policy.

2. CSAA promised to make the Tweets whole and never intended to do so. Plaintiffs relied upon this misrepresentation.

3. Defendants made false claims concerning prior damage to the Tweets' vehicle.

4. Defendants forced settlement by undue influence.

5. Defendants' misconduct was fraudulent, malicious and oppressive.

The Tweets assert that because Webster lives closer to Reno than Sacramento, it is more convenient for him to litigate in Reno.

■ In a diversity case, the power of a federal court to exercise personal jurisdiction over a non-resident defendant depends on a two-step test. First, the state's long arm statute must permit jurisdiction. Second, the exercise of jurisdiction must be consistent with due process. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.1980).

### I. NEVADA'S LONG ARM STATUTE

A. *Tort and Improper Negotiation Claims.*

■ The federal district court's determination of personal jurisdiction is made by examination of the forum state's long arm statute. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984); Nevada's long arm statute, NRS 14.065, confers jurisdiction over a non-resident who transacts any business or commits a tort within Nevada. *Shapiro v. Pavlikowski*, 98 Nev. 548, 549,

654 P.2d 1030 (1982); Here the subject automobile accident occurred in Portola, California. Therefore, the location of the automobile accident does not confer jurisdiction over Webster. Further, there is no evidence that Webster transacts any business in Nevada. The facts reflect that he has not even been in the state of Nevada since the automobile accident.

B. *Agency Relationship between the insurer and the insured.*

The Tweets claim that CSAA, acting as Webster's agent in Nevada, engaged in improper negotiations with the Tweets. Under NRS 14.065, jurisdiction is conferred over a nonresident defendant, who through an *agent*, transacts any business or commits a tort within Nevada. Research of Nevada law does not disclose any reported cases which deal with an agency relationship between the insured and the insurer in the context of personal jurisdiction. Consequently, it becomes necessary to examine the law of other jurisdictions.

In *Kirchen v. Orth*, 390 F.Supp. 313, 317 (E.D.Wis.1975), the court held that there was no personal jurisdiction over the insured because there was no agency relationship between the insured and the insurer during settlement negotiations. The court reasoned that insurance policies reserved complete control in this respect to the insurer. The court stated at 317:

> "All liability insurance policies contain provisions reserving to the insurer the right to defend any action against the insured and to make such investigation, negotiation, and settlement of any claim or suit as it, the insurer, deems expedient."

While this decision is persuasive, it is better practice to determine the agency relationship by examining the terms of the particular insurance policy. *See UTZ v. Nationwide Mut. Ins. Co.*, 619 F.2d 7, 10 (7th Cir.1980); *Uebelacker v. Horace Mann Ins. Co.*, 500 F.Supp. 180, 182 (E.D.Wis. 1980). The terms of the insurance policy should be examined to ascertain the following:

1. Does it invest the insurer with the complete control over compromising the claims against the insured.

2. Does the insured have a right to control the method, means or place of settlement negotiations.

3. Is the insurance company authorized to act in a dual capacity, the principle purpose of which is to protect its own contingent liability under the contract. *Kirchen*, 390 F.Supp. at 317.

By its order of June 4, 1984, this Court requested Tweets to submit evidence and affidavits to establish its jurisdiction. Webster's insurance policy was never submitted to this Court. The only document submitted to the Court which makes reference to the terms of the insurance policy is the affidavit of Robert Black submitted by defendant Webster. Mr. Black's affidavit indicates that he is the divisional claims manager for CSAA and that, according to the agreement between CSAA and all of its insureds, CSAA assumes total control of and responsibility for investigation, adjustment and settlement of a covered loss and that an insured has no input into CSAA negotiations or decisions concerning adjustment or settlement. A fair reading of this affidavit indicates that CSAA has complete control of the initiation and conduct of the settlement negotiations.

The extent of control retained by the insurance company is only one factor that determines whether an agency relationship exists.

> "There can be no agency relation unless the purported principal has some control or right of control over the actions of his purported agent. * * It is the existence of the right of control which establishes the existence of the agency relation. * * * *"

*Kirchen*, 390 F.Supp. at 317 quoting 2A C.J.S. Agency § 6 at 561 (1972). Therefore, the extent of the insured's control over the insurer must be examined. There is no support in either the Tweets' or Webster's affidavits for the proposition that Webster had any control over CSAA's set-

**134**

tlement negotiations with Tweet. The statements that Webster allegedly made to Tweet: "[I'll] turn the matter over to [my] insurance company; [They will] handle the matter for me" do not establish agency or control per se. The statement in Mr. Tweets' affidavit that CSAA agents told him that they were acting on behalf of Raymond Webster in the settlement negotiations does not indicate any control Webster had over CSAA in settlement negotiations. Further, Webster's affidavit states that he had "no control of, input into, or knowledge of ... any and all negotiations between [CSAA and Tweets]."

■ The evidence before the Court compels the conclusion that CSAA was not acting as Webster's agent during negotiations for settlement of the automobile claim. Therefore, the conduct of CSAA during investigation and settlement negotiations does not confer jurisdiction over Webster under NRS 14.065.

## II. DUE PROCESS ANALYSIS

■ For personal jurisdiction to lie, due process requires a defendant to have minimum contacts with the forum in order that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The contacts may give rise to general or limited jurisdiction.

### A. General Jurisdiction.

■ General jurisdiction arises when a nonresident defendant's activities in the forum are so substantial and continuous that due process does not require the cause of action to be related to the defendant's forum activities. *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1246 (9th Cir.1984); *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir.1978). The auto accident occurred in February of 1983. Webster's affidavit indicates he was never in Nevada in the year 1983, nor for any period of time after that up to July 5, 1984. Consequently, Webster has not engaged in any substantial and continuous activity in Nevada that would support general jurisdiction.

### B. Limited Jurisdiction.

■ According to due process, the test for limited jurisdiction requires the following tests to be applied to determine whether the defendant's contacts with the forum permit the exercise of jurisdiction over him.

1. The defendant must have purposefully availed himself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws;

2. The claim must have arisen out of or resulted from the defendant's forum-related activities; and

3. The exercise of jurisdiction must be reasonable.

*Cubbage v. Merchent*, 744 F.2d at 668; *Basic Food Industries, Inc. v. Eighth Judicial Dist. Ct.*, 94 Nev. 111, 113, 575 P.2d 934, 935 (1978).

■ Purposeful availment requires that the defendant's conduct and connection with the forum state be such that he should reasonably foresee being haled into court there. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). *Cubbage v. Merchent*, 744 F.2d at 668. As was extensively canvassed previously, CSAA was not Webster's agent in negotiations. Thus, Webster had no control over selection of the place CSAA decided to negotiate. In this respect, Mr. Black's affidavit states that CSAA transferred Webster's file to the Reno office because Tweets had relocated there. It is offensive to due process to force Webster (who had no control over CSAA's negotiation decisions) to be haled into court in Nevada, simply because CSAA transferred Tweets' file after the Tweets decided to relocate to Nevada. "The Due Process Clause ... allows potential defendants to structure their ... conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen* 444 U.S. at 297, 100 S.Ct. at 567. Webster, who has no minimum contacts

with Nevada, and had no knowledge of any negotiations in Nevada could not foresee being haled into court here.

The Tweets also assert that Webster lives closer to Reno than Sacramento, making it more convenient for Webster to litigate in Reno. The convenience to the non-resident defendant in litigating in the forum alone is insufficient to grant jurisdiction. Although he once worked in Nevada, Webster's employment in Nevada years ago does not meet the minimum contacts standard. This Court is without jurisdiction to render a binding judgment against Webster because he has not had the requisite minimum contacts with Nevada. *See Id.* at 294, 100 S.Ct. at 565.

The party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). Plaintiff must make a prima facie showing of jurisdictional facts, where the court, as in this instance, is considering only written materials. *Ibid.* The Tweets have failed to establish jurisdiction. The Tweets' version of the facts does not demonstrate that Webster has committed a tort or transacted any business in Nevada. The Tweets have failed to establish that CSAA was Webster's agent in the settlement negotiations between CSAA and Tweets. They have not shown that Webster purposefully availed himself of the privilege of conducting activities in Nevada.

The Tweets contend that Webster answered his complaint through CSAA's answer. On this basis it is alleged that Webster is precluded from raising the defense of lack of jurisdiction. This argument is based on CSAA's Fourteenth affirmative defense which alleges that "Neither this defendant nor any of the defendants named in plaintiff's complaint committed any acts of bad faith, oppression, fraud or malice." However, the answer commences with the phrase "COMES NOW ... CALIFORNIA STATE AUTOMOBILE ASSOCIATION." The answer is signed by CSAA's attorney on behalf of CSAA.

Webster did not by virtue of the answer of CSAA make a general appearance and thereby waive his right to raise the defense of lack of jurisdiction.

The Tweets also contend that the parties stipulated an extension of time would be given with the express understanding that CSAA and Webster would generally appear and answer. However, according to Rule 7(b) of the Rules of Practice United States District Court for the District of Nevada no stipulations between the parties which relate to proceedings before the court are effective unless approved by the court. Furthermore, even if the parties did stipulate that Webster could only answer and not otherwise plead, he could nevertheless raise the defense of lack of jurisdiction in his answer. Federal Rules of Civil Procedure 12(h)(1).

IT IS, THEREFORE, HEREBY ORDERED that the motion of defendant Raymond A. Webster to quash service of process for lack of personal jurisdiction is GRANTED.