**CRAIGSLIST, INC., Plaintiff,**

v.

**Paul HUBERT, Defendant.**

**No. C 08–05067 JW.**

United States District Court, N.D. California, San Francisco Division.

Nov. 22, 2011.

Brian Patrick Hennessy, Liling Poh, Perkins Coie, LLP, Palo Alto, CA, Elizabeth L. McDougall, Perkins Coie LLP, Seattle, WA, for Plaintiff.

Matthew William Kumin, Kumin Sommers LLP, San Francisco, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT

JAMES WARE, Chief Judge.

### I. INTRODUCTION

craigslist, Inc. ("Plaintiff") brought this action against Paul Hubert ("Defendant"), alleging, *inter alia,* copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.,* violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.,* and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Plaintiff alleges that Defendant developed computer software and other automated devices and programs that enable auto-posting of ads on Plaintiff's website. On April 15, 2010, the Court granted Plaintiff default judgment against Defendant.[1]

Presently before the Court is Defendant's Motion to Vacate Default Judgment.[2] The Court conducted an evidentiary hearing on October 31, 2011.[3] Based on the papers submitted to date, oral argument, and the evidence presented at the hearing, the Court DENIES Defendant's Motion.

### II. BACKGROUND

A detailed description of the factual allegations in this case can be found in the Court's April 15 Order. The Court reviews the procedural history of the case as relevant to the present Motion.

On November 5, 2008, Plaintiff filed its original Complaint. (*See* Docket Item No. 1.) On September 23, 2009, Plaintiff filed a Second Amended Complaint naming Mr. Hubert as Defendant. (*See* Docket Item No. 37.) On October 8, 2009, Plaintiff filed a Certificate of Service of Summons and Complaint on Defendant.[4] The Certificate of Service was executed by John Madan, who swore that that he served Defendant's residence and left the service documents with another resident who identified himself as Chad. (*See id.*) On October 28, 2009, Plaintiff filed its Request for Entry of Default. (*See* Docket Item No. 47.) On November 5, 2009, the Clerk of Court entered default against Defendant. (*See* Docket Item No. 49.) On December 18, 2009, Plaintiff moved for default judgment. (*See* Docket Item No. 53.) On February 25, 2010, the Court issued an Order to Produce Further Evidence of Statutory Damages Associated with the Motion for Default Judgment. (*See* Docket Item No. 58.) On March 2, 2010, Plaintiff filed its Supplemental Evidentiary Brief. (*See* Docket Item No. 59.) On April 15, 2010, the Court granted Plaintiff's Motion for Default Judgement. (*See* April 15 Order.)

Presently before the Court is Defendant's Motion to Vacate Judgment.

### III. STANDARDS

■ Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment," because, *inter alia,* "the judgment is void." Fed.R.Civ.P. 60(b)(4). "A final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *United States v. Berke,* 170 F.3d 882, 883 (9th Cir.1999) (quotation omitted). A default judgment is void if the defendant to the suit was never properly served.

---

1. (*See* Order Granting Plaintiff's Motion for Default Judgment, hereafter, "April 15 Order," Docket Item No. 63.)

2. (Defendant Paul Hubert's Notice of Motion and Motion to Vacate Default Judgment (FRCP 60(b)(4)), hereafter, "Motion," Docket Item No. 65.)

3. (*See* Transcript of Proceedings, hereafter, "Hearing Transcript," Docket Item No. 93.)

4. (Certificate of Service by craigslist, Inc. of Summons and Second Amended Complaint on Paul Hubert, hereafter, "Certificate of Service," Docket Item No. 42.)

*See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir.1992).

■ The burden to establish that a court has personal jurisdiction over a defendant rests with a plaintiff and must be established by a preponderance of the evidence. *See Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir.1978). The decision to consider affidavits, allow discovery, or hold an evidentiary hearing to determine jurisdictional facts is left to the discretion of the trial court. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

## IV. DISCUSSION

Defendant moves to vacate the Default Judgment against him on the grounds that: (1) contrary to Plaintiff's claims, process was never served at 25 W. Malloryville Road, Freeville, N.Y. ("the Freeville residence"); and (2) even if process was served at that residence, it was not his place of usual abode at the time of the alleged service. (Motion at 1–2.) Plaintiff responds that all credible evidence demonstrates both that (1) process was served to the Freeville residence on September 28, 2009; and (2) the Freeville residence was Defendant's residence of usual abode for purposes of serving process at that time.[5] The Court considers each of Defendant's contentions in turn.

### A. Alleged Lack of Service

At issue is whether the default judgment should be vacated based on Defendant's allegation that process was never served on the Freeville residence.

■ Federal Rule of Civil Procedure 4(e) provides that service of process may be made on an individual within any United States judicial district by, *inter alia*, "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." When a defendant alleges that he was not served with process, "[a] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir.2007) (citation omitted).[6] Accordingly, where a plaintiff has filed a signed return of service, courts regularly find that a self-serving declaration that a person was not served is insufficient to overcome this prima facie evidence of valid service.[7]

■ Here, Plaintiff offers the following evidence in support of its contention that notice was served on September 28, 2009:

John Madan ("Madan"), a professional process server with twenty-nine years of experience, returned a signed certificate of service to Plaintiff on October 7, 2009.[8] This Certificate of Service was filed with the Court on October 8, 2009. (*See* Certificate of Service.) The Certificate of Service reports that process was served at 25 W. Malloryville Road, Freeville, N.Y. on

---

**5.** (Plaintiff and Judgment Creditor craigslist, Inc.'s Opposition to Defendant and Judgment Debtor Paul Hubert's Motion to Vacate Default Judgment at 7, hereafter, "Opp'n," Docket Item No. 72.)

**6.** Plaintiff contends that the burden to demonstrate lack of service should be placed on Defendant in the first instance because Defendant had actual notice of the lawsuit. (Opp'n at 3.) When a defendant who had actual notice of a proceeding seeks to vacate judgment based on improper service of process, he does bear the burden of showing insufficient service. *Internet Solutions*, 509 F.3d at 1165. Here, whether Defendant had notice of the proceeding before default was entered is a disputed issue of fact. (*See* Hearing Transcript at 6:21–7:1.) Because the Court finds that Plaintiff has proven that notice was properly served, it need not determine whether Defendant had actual notice and should bear the burden of proof for this Motion.

**7.** *See, e.g., Saxon Mortg. Servs., Inc. v. Hillery*, No. C–08–4357 EMC, 2008 WL 5170180, at *2–3 (N.D.Cal. Dec. 9, 2008) (finding declarations of defendant and her co-habitant that process was not served properly insufficient to defeat presumption created by signed return of service); *Holmes v. Plath*, No. 1:01–cv–06359–AWI–GSA–PC, 2011 WL 864301, at *1 (E.D.Cal. Mar. 10, 2011) (holding that the defendant "cannot overcome this presumption of service merely by denying that he did not receive the complaint."); *Am. Honda Motor Co., Inc. v. AZGrafix*, No. CV–08–0656–PHX–FJM, 2008 WL 5329062, at *1 (D.Ariz. Dec. 19, 2008).

**8.** (*See* Affidavit of John Madan in Support of Plaintiff craigslist, Inc.'s Opposition to Defendant Paul Hubert's Motion to Vacate Default Judgment ¶¶ 1–2, hereafter, "Madan Aff.," Docket Item No. 78.)

September 28, 2009. (*Id.*) The certificate further provides that the documents were left with a person who identified himself as Chad but would not provide his last name. (*Id.*) Madan asked the person who identified himself as Chad whether Paul Hubert lived at the residence before leaving notice with him, and Chad answered that he did. (Madan Aff. ¶ 5.) Upon receiving confirmation that Defendant lived at the residence, Mr. Madan gave the papers to Chad and informed him that they were for Defendant. (*Id.* ¶ 6.)

Upon review, the Court finds that the signed return of service provided by Plaintiff, standing alone, provides prima facie evidence of valid proof of service. *See Internet Solutions*, 509 F.3d at 1165. Accordingly, Defendant may overcome this prima facie showing only by providing "strong and convincing evidence" that he was not properly served. *Id.*

In support of his contention that service was not properly served on the Freeville residence, Defendant offers two pieces of evidence: (1) his own Affidavit and testimony, stating that he was not living at the Freeville residence from May through November of 2009, and that documents were never left there for him;[9] and (2) the Affidavit and testimony of Chad Conley ("Conley"), owner of the Freeville residence, describing several instances of process servers unsuccessfully attempting to serve process on Defendant at his home.[10] The Court considers each piece of Defendant's evidence in turn.

With regards to Defendant's own Affidavit, the Court finds that it is insufficient to defeat Plaintiff's prima facie evidence for several reasons. First, as discussed above, a self-serving declaration is generally insufficient to defeat a signed returned of service.[11] Sec-

ond, since Madan did not claim to serve Defendant at the home but instead left the documents with Conley, Defendant does not have personal knowledge to support his claim that "documents were never left with Chad." (Hubert Aff. ¶ 11.) At most, Defendant may be able to establish that Conley never informed him that documents were left at the residence for him. Rule 4(e) does not require, however, that the defendant ever be told of service of process for the service to be valid.[12] Thus, Defendant's conclusion that process was never served on the Freeville residence is purely speculative.

Defendant's second piece of evidence in support of his claim is the testimony of Conley. At the October 31 hearing, Conley testified that although a number of process servers attempted to serve Paul Hubert at the Freeville residence, all left without delivering papers after he informed them that Defendant did not reside there. (*See* Hearing Transcript at 50:20–56:20).

Upon review, the Court finds that this testimony does not defeat Plaintiff's evidence of proper service. After hearing testimony from both the process server (Madan) and Conley, the Court finds that Madan was substantially more credible in his description of the events that took place on September 28, 2009. In addition to the fact that Madan is a disinterested third party, his testimony was consistent with the returned proof of service filed immediately after service, his Affidavit submitted prior to the hearing, and the records kept in his daybook reflecting service of process.[13] Conley, by contrast, changed his testimony significantly from that provided in his Affidavit, and at times flatly contradicted it.[14] Thus, the Court finds that all of the credible evidence presented demonstrates

**9.** (*See* Affidavit of Paul Hubert ¶¶ 4, 11, hereafter, "Hubert Aff.," Docket Item No. 67.)

**10.** (*See* Affidavit of Chad Conley, hereafter, "Conley Aff.," Docket Item No. 68.)

**11.** *See, e.g., Hillery*, 2008 WL 5170180, at *2–3; *Am. Honda*, 2008 WL 5329062, at *1.

**12.** *See* Fed.R.Civ.P. 4(e); *see also Smith v. Kincaid*, 249 F.2d 243, 245 (6th Cir.1957).

**13.** (*Compare* Madan Aff. ¶¶ 5–6 *with* Hearing Transcript at 75:1–76:7, 81:22–83:11.)

**14.** (*Compare* Conley Aff. ¶¶ 11, 14 (stating that on June 27, 2011, he recognized a process server as the same person who attempted service in 2009) *with* Hearing Transcript at 52:14–56:13 (describing attempts at service of process by two different process servers); Conley Aff. ¶ 22 (stating that Paul Hubert did not live at the Freeville home at any time that service was attempted) *with* Hearing Transcript at 55:10–57:8 (stating that service was attempted on the Freeville residence in May of 2010, and acknowledging that Paul Hubert lived with him in May of 2010).)

that process was properly served on September 28, 2009.

Because Plaintiff has provided prima facie evidence that process was properly served, and because Defendant has not produced strong and convincing evidence sufficient to overcome Plaintiff's showing, the Court finds that Plaintiff has adequately demonstrated that Defendant was served.

Accordingly, the Court DENIES Defendant's Motion on the ground that service never occurred.

## B. *Place of Usual Abode*

At issue is whether the Freeville residence at which process was served constituted Defendant's place of usual abode for purposes of Rule 4(e).

 Rule 4(e) requires that if not delivered in person, a copy of the summons and complaint must be left at an individual's "dwelling or usual place of abode." Fed. R.Civ.P. 4(e)(2)(B). The determination of whether a particular residence counts as a party's place of usual abode is "highly fact-specific."[15] It is clear, however, that a person may "have more than one dwelling house or usual place of abode for purposes of [Rule 4(e)]." *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir.1997) (citing *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991)). Thus, multiple residences may qualify provided that each bears "sufficient indicia of permanence." *Nat'l Dev. Co.*, 930 F.2d at 257. Furthermore, a defendant who has repeatedly represented to either the plaintiff or to outside parties that one residence is his place of usual abode may be estopped from later contesting that said residence was the proper location for service of process. *See Jaffe and Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y.1994).

 Here, Defendant contends that although he lived at the Freeville residence between January and April of 2009, he lived in Otego, NY, from May until November of that year. (Hubert Aff. ¶¶ 3, 4.) Plaintiff offers the following evidence in support of its contention that the Freeville residence was Defendant's place of usual abode in September of 2009:

On July 21, 2009, Defendant signed a bank signature card listing the Freeville residence as his address.[16] This form specifically verified that the information provided, including the Freeville address, was current. (*Id.*) In August of 2009, Defendant renewed his vehicle registration using the Freeville residence as his address.[17] On October 25, 2009, Defendant filled out and signed a loan application in which he listed the Freeville address as his residence.[18] That form provided that it was a crime to make an intentionally false statement on the form. (*Id.*) Defendant's bank statements and credit card bills from May 2009 to November 2009 list the Freeville residence as Defendant's address and were mailed to that address.[19]

On Defendant's blog, Defendant made numerous statements regarding the Freeville residence between May and November of 2009. In June 2009 Defendant posted "Today Chad and his brother Trent were fastening the cabinets together in preparation for putting them up on the wall. The cabinets look great and even though it might seem like we're making fast progress; [sic] I wish it was all happening faster. I am tired of not having a kitchen to prepare good meals."[20] Also in June 2009, Defendant posted, "Today we are (well Chad is) leveling the kitchen floor before we install the base cabinets.... [T]he leveling mix actually works great. I

15. *Agricola ABC, S.A. de C.V. v. Chiquita Fresh N. Am., LLC*, No. 10cv772–IEG(NLS), 2010 WL 4809641, at *4 (S.D.Cal. Nov. 19, 2010); *see also Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144, 145 (D.Ariz.1970).

16. (Declaration of Jeffrey M. Hanson in Support of Plaintiff and Judgment Creditor craigslist, Inc.'s Opposition to Defendant and Judgment Debtor Paul Hubert's Motion to Vacate Default Judgment, Ex. C, hereafter, "Hanson Decl.," Docket Item No. 76–1.)

17. (Hanson Decl., Ex. DD, Docket Item No. 76–4.)

18. (Hanson Decl., Ex. J, Docket Item No. 76–1.)

19. (Hanson Decl., Exs. B, D–E, G–H, and K–L, Docket Item No. 76–1.)

20. (Hanson Decl., Ex. S at 2, Docket Item No. 76–3.)

want to use it in the garage and in the basement as well ... The cabinets shouldn't take too long to install and the granite just has to be positioned. My kitchen will be usable before I know it!" (*Id.* at 3.)

In August of 2009, Defendant posted on his Twitter account that "Our Granite Countertops have finally been installed."[21]

Defendant acknowledges that he left personal belongings at the Freeville residence for the duration of time he claims to have lived with his sister.[22]

To support his contention that he stopped living at the Freeville residence in May of 2009, Defendant offers the following evidence: (1) his own Affidavit and testimony asserting that he moved to Otego from May to November of 2009; (2) the Affidavit of his sister, Penny Utter, stating that Defendant lived with her from May 2009 to November 2009;[23] and (3) the testimony of Conley that although Defendant otherwise lived with him continuously from 2006 until 2010, Defendant moved out from May to November of 2009.[24]

Upon review, the Court finds that the affidavits and testimony submitted by Defendant are belied by the overwhelming evidence that the Freeville home was his place of usual abode. The receipt of mail at a given address, the listing of an address on a vehicle registration, and the use of an address on financial records have all been found to provide indicia of permanence in determining whether an address constitutes a place of usual abode.[25] Here, every record before the Court represented the Freeville address as Defendant's residence, including some records signed by Defendant under threat of criminal sanction. Further, Defendant's statements on his blog regarding the remodel of the Freeville residence demonstrate that he remained involved with the home during the disputed period, even referring to the home's kitchen as "my kitchen."[26] Thus,

even if it is the case that Defendant temporarily resided with Ms. Utter for a few months, the Court finds that the Freeville address nonetheless bore sufficient indicia of permanence to constitute a place of "usual abode" for purposes of Rule 4(e).

Accordingly, the Court DENIES Defendant's Motion to Vacate on the ground that the Freeville residence was not his usual place of abode.

## V. CONCLUSION

The Court DENIES Defendant's Motion to Vacate Default Judgment.

---

**21.** (Hanson Decl., Ex. X at 5, Docket Item No. 76–3.)

**22.** (Hearing Transcript at 34:19–35:13.)

**23.** (Affidavit of Penny Utter, hereafter, "Utter Aff." Docket Item No. 69.)

**24.** (Hearing Transcript at 57:3–57:8.)

**25.** *See, e.g., Jaffe*, 158 F.R.D. at 280 (considering receipt of mail at address as an indicium of permanence); *Polygram Merch., Inc v. N.Y. Wholesale Co.*, No. 97 CIV 6489(HB), 2000 WL 23287, at *3 (S.D.N.Y. Jan. 13, 2000) (finding that use of address for bank account and car registration provided "badges of permanence").

