[No. 50020–7.   En Banc.   June 27, 1985.]

CHEMICAL BANK, *Respondent,* v. WASHINGTON PUBLIC
POWER SUPPLY SYSTEM, ET AL, *Defendants,*
CENTRAL LINCOLN PEOPLE'S UTILITY
DISTRICT, ET AL, *Appellants.*

*Lane, Powell, Moss & Miller,* by *Larry S. Gangnes, H. Peter Sorg, Jr.,* and *Timothy F. Brown,* for appellants Oregon PUD's.

*Detels, Madden, Crockett & McGee,* by *Bonita L. Olson,* for appellants Cities of McMinnville and Springfield.

*Betts, Patterson & Mines, P.S.,* by *Michael Mines* and *James P. Solimano* (*Cravath, Swaine & Moore,* of counsel), for respondent.

UTTER, J.—Six Oregon defendants who prevailed in earlier litigation involving agreements to build two nuclear power plants brought suit to recover attorney fees under the Washington long–arm statute, RCW 4.28.185(5). The trial court's denial of the request for attorney fees presents the sole issue on appeal. We find no error in law or abuse of discretion and affirm.

In 1978, appellants, four Oregon People's Utility Districts (PUD's) and the Oregon Cities of Springfield and McMinnville, along with 82 other "participants"[1] joined with Washington Public Power Supply System (WPPSS) and Pacific Power and Light to obtain financing for the construction of two nuclear power plants, WNP 4 and WNP 5. When the projects ran into massive cost overruns, WPPSS decided to terminate the plants prior to completion. Substantial litigation in numerous forums followed.

On December 22, 1981, ratepayers of the city of Springfield filed suit challenging the authority of the City to enter into the participants' agreement. Between March and May 1982, motions to intervene were filed in the Oregon action by several Oregon cities, including McMinnville, and the four Oregon PUD's appealing here. The court allowed these motions on May 26, 1982, and the parties filed an amended, consolidated complaint on July 13, 1982. Chemical Bank, trustee for the bondholders, chose not to intervene.

Instead, in May 1982, Chemical Bank instituted a declaratory judgment action in King County Superior Court, seeking a legal determination that the 88 partici-

---

[1]The "participants" include 9 Washington cities, 7 Oregon cities, 5 Idaho cities, 19 Washington PUD's, 1 Washington irrigation district, 43 rural electric cooperatives, and 4 Oregon PUD's.

pants were contractually bound to make payments to WPPSS pursuant to the payment schedule found in the participants' agreement. Various participants interposed numerous defenses to the Chemical Bank action and cross claims against WPPSS. Some of the participants alleged that they did not have authority to enter into the agreement. The King County trial court stayed all issues as to authority of the Oregon participants due to the litigation already proceeding in Oregon.

On November 5, 1982, the Oregon trial court held that the Oregon Cities and PUD's lacked authority and that the agreement was contrary to public policy. On November 16, 1982, the King County trial court entered an order of summary judgment for Chemical Bank. Participants were ordered by the court to fund their respective shares of the debt service on the bonds, even if the projects were never completed. The court also ruled that the participants were required to fund the cost of decommissioning WNP 4 and WNP 5. Finally, the court concluded that the Washington participants had authority to enter into the participants' agreement.

The participants appealed from the order of the King County Superior Court. This court granted review of the authority and interpretation issues. In an opinion filed June 15, 1983, this court held that the Washington PUD's and Washington municipal participants lacked authority to enter into the agreement. *Chemical Bank v. WPPSS*, 99 Wn.2d 772, 799, 666 P.2d 329 (1983) (*Chemical Bank* I).

On remand, the King County Superior Court ordered summary judgment in favor of all of the participants on August 11, 1983. In compliance with the mandate of this court, the order provided that, as to the Washington PUD's and municipalities, the agreement is ultra vires and unenforceable. As to the other participants, the court held the participants' agreement ineffective and unenforceable on the grounds of failure of the condition of 100 percent participation, mutual mistake, and frustration of purpose.

Subsequent to the trial court's summary judgment order

of August 11, 1983, various participants filed motions for attorney fees. The four Oregon PUD's and the Cities of Springfield and McMinnville sought attorney fees pursuant to Washington's long-arm statute, RCW 4.28.185(5). By order dated October 4, 1983, the trial court denied motions by various parties for attorney fees.

Only the four Oregon PUD's and the Cities of Springfield and McMinnville appealed on that issue. Chemical Bank and WPPSS appealed the decision of the trial court on remand and also moved for reconsideration of *Chemical Bank* I. Before this court rendered its decision on the issues determined on remand—including liability of the Oregon participants—the Oregon Supreme Court reversed the Oregon trial court and held that the Oregon Cities and PUD's had authority to enter into the agreements. *DeFazio v. WPPSS*, 296 Or. 550, 679 P.2d 1316 (1984). In November 1984, this court affirmed its decision in *Chemical Bank* I and also affirmed the trial court's release of the remaining 60 participants on the grounds of commercial frustration and mutual mistake. *Chemical Bank v. WPPSS*, 102 Wn.2d 874, 691 P.2d 524 (1984) (*Chemical Bank* II). The United States Supreme Court denied certiorari. ___ U.S. ___, 85 L. Ed. 2d 510, 105 S. Ct. 2154 (1985).

Without question the Oregon appellants were prevailing parties in the underlying action. Washington's long-arm statute provides:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

RCW 4.28.185(5). This provision is discretionary rather than mandatory. *State v. O'Connell*, 83 Wn.2d 797, 844, 523 P.2d 872 (1974) (*O'Connell* I). That case established standards which govern the exercise of the court's discretion in awarding attorney fees:

> Is the action frivolous and brought only to harass the

defendant? If that question is answered in the negative, the test should then be: Has the defendant, in being forced to defend the action in this state, been subjected to burdens and inconveniences which would have been avoided had the trial been conducted at the place of his domicile, which are not balanced by conveniences to the defendant resulting from the trial of the action in this state, and which are of sufficient severity to warrant the court in concluding that, without the award of attorney fees, traditional notions of fair play and substantial justice would be violated?

*State v. O'Connell,* 84 Wn.2d 602, 606, 528 P.2d 988 (1974) (*O'Connell* II).

Absent a clear showing of abuse of discretion, this court will not set aside the trial court's ruling. *O'Connell* I, at 844; *Marketing Unlimited, Inc. v. Jefferson Chem. Co.,* 90 Wn.2d 410, 412–13, 583 P.2d 630 (1978). The award "may be any amount, up to defendant's actual expenditure, which is necessary to satisfy traditional notions of fair play and substantial justice." *Marketing Unlimited,* at 413.

Although appellants argue that Chemical Bank could have brought this action in Oregon, they concede that the underlying suit was not frivolous or brought only to harass. Nevertheless, appellants maintain that in being forced to defend this action in Washington, they were subjected to burdens and inconveniences which could have been avoided had the action been conducted in Oregon. They contend that no countervailing conveniences offset the burdens and inconveniences.

The trial court disagreed. The court observed that several issues, particularly that of contract interpretation, raised in the underlying action in Washington, either were not, or could not have been, raised in Oregon's *DeFazio* case. Furthermore, the court perceived a benefit to appellants in that they were able to join in the defenses raised by other participants. The court also noted the expeditious manner in which the courts of this state dealt with this exceedingly complex litigation. Finally, even assuming that appellants suffered certain inconveniences which could have

been avoided if the action had been brought in Oregon, and that these burdens were not offset by conveniences resulting from the trial of the action in this state, the trial court determined that these were not of such severity as to warrant the court in concluding that, without the award of attorney fees, traditional notions of fair play and substantial justice would be violated.

There is no question but that the underlying litigation was conducted at considerable expense. Appellants maintain that they incurred attorney fees substantially in excess of what they would have incurred had Chemical Bank either timely intervened in *DeFazio* or instituted a separate action in Oregon. They retained separate counsel in Seattle and Oregon, an expense which might have been avoided had the entire litigation been conducted in Oregon.

Appellants maintain that the trial court misapplied the standard set forth in *O'Connell* II. Specifically, they contend that the benefits the trial court perceived by no means counterbalance the inconveniences. They also submit that they could have enjoyed these same benefits had the action been tried in Oregon. In fact, events since the trial court ruling indicate that Oregon may also have been a proper forum. The execution of net billing agreements and other power contracts with the Bonneville Power Administration has subjected the participants to personal jurisdiction in Oregon courts under Federal Rule of Civil Procedure 4(e) and Oregon Rule of Civil Procedure 4(L) with regard to other proposed nuclear power plants. *Springfield v. WPPSS,* 564 F. Supp. 86, 90 n.4 (D. Or. 1983), *aff'd as modified,* 752 F.2d 1423 (9th Cir. 1985). *Springfield* and *DeFazio* also indicate that *Chemical Bank*–type litigation could have proceeded as comprehensively and expeditiously in Oregon as it did in Washington.

Most important here, however, is the purpose of the attorney fee provision. This provision aims to bring the long–arm statute within traditional notions of fair play and substantial justice. *O'Connell* II, at 605–06; *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S.

Ct. 154, 161 A.L.R. 1057 (1945). The letter and spirit of the provision allowing award of attorney fees are met only when the defendant can show that joinder in a Washington action was so inconvenient and unduly burdensome that traditional notions of fair play and justice would be violated absent an award of attorney fees. *O'Connell* II, at 606–07.

In the instant case, appellants entered into an agreement in Washington with WPPSS, a Washington entity, to obtain financing for the construction of two nuclear power plants within Washington. The participants' committee, of which appellants were members, met periodically to manage and oversee construction. Though the committee's power may have been limited, its activity was continuous over a number of years. This is not a case in which appellants had only minimum contacts with the State.

Appellants undoubtedly suffered increased expenses, and the attorney fees battled over here are significant in amount;[2] nonetheless, the trial court appropriately exercised its discretion for reasons we have stated. Its action is consistent with what we believe to be the underlying purpose of the statute.

DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., and BAKER, J. Pro Tem., concur.

---

[2]At oral argument, appellants estimated the fees sought would exceed $700,000.