[No. 55426–9.   En Banc.   February 15, 1990.]

THE SCOTT FETZER COMPANY, KIRBY COMPANY DIVISION,
*Respondent,* v. CAROL J. WEEKS, ET AL,
*Defendants,* DWIGHT'S DISCOUNT
VACUUM CLEANER CITY, INC.,
*Petitioner.*

*McDonald, Harmon & Malone*, by *Charles M. McDonald; Van Camp & Bennion, P.S.*, by *W. Russell Van Camp;* and *F. Lawrence Taylor, Jr.*, for petitioner.

*Reed & Giesa, P.S.*, and *D. Roger Reed*, for respondent.

DURHAM, J.—The principal issue presented for decision is whether the fees awards provision of Washington's long–arm statute, RCW 4.28.185(5), authorizes an award of attorney fees when a foreign defendant prevails on jurisdictional grounds. We hold that it does. Additionally, we offer

some guidance on the scope and amount of fees awards that properly may be made under this statute.

I

Respondent The Scott Fetzer Company, Kirby Company Division (Kirby), a vacuum cleaner manufacturer, commenced this action in the Superior Court for Spokane County on July 14, 1986. Kirby named petitioner Dwight's Discount Vacuum Cleaner City, Inc. (Dwight's), a Texas vacuum cleaner retailer, among several defendants, charging that Dwight's had tortiously interfered with Kirby's contractual relationship with a Spokane distributor. In its answer, filed in October 1986, Dwight's denied Kirby's assertion of jurisdiction under the long–arm statute. Dwight's did not bring a motion asserting the defense of lack of jurisdiction until February 9, 1987, however.

At the instance of the trial court, an evidentiary hearing on Dwight's' jurisdictional motion was held on March 6, 1987, and the motion was granted. The trial court's formal order noted that "[t]he continuation of this suit against this defendant would offend the traditional notions of fair play and substantial justice, and would be in violation of the due process clause of the 14th Amendment of the Constitution of the United States."

In addition to dismissing the action, the trial court granted Dwight's' application for an award of attorney fees and costs pursuant to RCW 4.28.185(5) in the amount of $116,787.54. While Kirby's appeal from these rulings was pending, judgment was entered in another suit between these same two parties by a federal court in Texas.[1] The parties having agreed that the Texas judgment rendered the present case moot, the Court of Appeals decided only the appeal from the fees award and declined to review the

---

[1] Dwight's won a trial verdict in the Texas lawsuit, but the verdict was vacated on appeal. *See Dwight's Discount Vacuum Cleaner City, Inc. v. Scott Fetzer Co.*, 860 F.2d 646 (5th Cir. 1988).

play and substantial justice" standard with the constitutional test of jurisdiction creates a curious analytic redundancy, rendering fees awards decisions in some cases paradoxical, and in others seemingly inescapable.

The question before the Court of Appeals in *Mahnkey* was whether RCW 4.28.185(5) violates constitutional equal protection guaranties by allowing fees awards only to nonresident defendants. The Court of Appeals upheld the provision on the basis that the distinction drawn between resident and nonresident defendants had not been demonstrated to be unreasonable or arbitrary. To the contrary, the court explained, fees awards are appropriately authorized for nonresident defendants to compensate for the extra burdens they face when litigating in Washington.

On its own terms, the *Mahnkey* opinion would have been complete without further elaboration. However, the opinion continued:

> The reason for delineating out–of–state defendants as a specific class is amply set forth in [*Omstead v. Brader Heaters, Inc.*, 5 Wn. App. 258, 487 P.2d 234 (1971), *adopted in* 80 Wn.2d 720, 497 P.2d 1310 (1972)]. The action by the legislature was intended to bring the statute within the traditional notions of "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945).

*Mahnkey,* at 559.

*Mahnkey*'s claim that the Legislature intended the fees provision to conform the statute to constitutional standards for long–arm jurisdiction is insupportable. First, as the *Mahnkey* court itself acknowledged, *Mahnkey,* at 559, an authorization of fees awards is not necessary for this purpose. Second, *Omstead v. Brader Heaters, Inc.,* 5 Wn. App. 258, 487 P.2d 234 (1971), the sole source of *Mahnkey*'s statutory interpretation, said nothing about the legislative intent underlying the fees award statute. The Court of Appeals comment in *Omstead* that a foreign defendant's burdens of litigating in Washington are eased somewhat by

trial court's jurisdictional ruling. We similarly do not address the question of jurisdiction.[2]

With respect to Dwight's' fees application, the Court of Appeals reversed the trial court, holding that because Dwight's had not prevailed on the merits of the litigation, RCW 4.28.185(5) does not authorize a fees award. The Court of Appeals has applied this same "merits" limitation in another case. *Osborne v. Spokane,* 48 Wn. App. 296, 738 P.2d 1072 (1987). We do not believe this is a proper interpretation of the long–arm statute's fees award provision, however. Thus, we reverse the Court of Appeals holding in this case and reject as well its decision in *Osborne.*

## II

RCW 4.28.185(5) authorizes an award of reasonable attorney fees to a defendant who, having been hailed into a Washington court under the long–arm statute, "prevails in the action". The statute says nothing to suggest that awards are permitted only when the defendant prevails on the merits. Nor does our case law support a "merits" limitation.

In *Osborne,* the Court of Appeals interpreted *State v. O'Connell,* 84 Wn.2d 602, 528 P.2d 988 (1974), as supportive of a "merits" limitation, quoting the following passage from the *O'Connell* opinion:

> The statute provides for the award of attorney fees to a defendant who prevails "in the action." Undoubtedly the reference is to the *action on the merits.*

*Osborne,* at 303 (quoting *O'Connell,* at 605). The emphasis, and the conclusion drawn from it, are misplaced. At issue in *O'Connell* was this court's power to award attorney fees to a foreign defendant who had successfully defended a trial verdict on appeal. We held that RCW 4.28.185(5) gave us that power, rejecting the plaintiffs' contention that the

---

[2]Because Kirby's answer to Dwight's' petition for review did not raise the question of jurisdiction, the trial court's disposition of that issue is the law of this case. *See* RAP 13.7(b); *Grange Ins. Ass'n v. State,* 110 Wn.2d 752, 757, 757 P.2d 933 (1988).

defendants, having lost their cross appeal from an order denying an award of fees for litigation in the trial court, *see State v. O'Connell,* 83 Wn.2d 797, 844, 523 P.2d 872, 77 A.L.R.3d 874 (1974), had not "prevailed in the action" within the meaning of the statute:

> We do not find this argument persuasive. The statute provides for the award of attorney fees to a defendant who prevails "in the action." Undoubtedly the reference is to the action on the merits. The motion for attorney fees is entertained only after the defendant has prevailed in the action. His status as prevailing party is not affected by the ruling on the motion for attorney fees.

*O'Connell,* 84 Wn.2d at 605. Clearly, by our reference to "the action on the merits", we meant only to distinguish the defendants' success in the principal action from their failure to win an award of fees incurred at trial. *O'Connell* says nothing to suggest that the fees statute authorizes fees awards only when the defendant prevails on the merits of the principal action.

The current of our case law rather runs against a "merits" limitation. For example, in *Andersen v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 505 P.2d 790 (1973), we held that a fees award to a foreign defendant is authorized by RCW 4.28.185(5) when the plaintiff voluntarily dismisses the action. Nothing in the *Andersen* opinion suggests that we regarded the defense victory there as a victory on the merits. To the contrary, we held that a fees award was permissible notwithstanding that the judgment was not on the merits:

> The legislature must have had in mind situations such as this, *as well as those in which the defendant might prevail on the merits,* when it provided for the taxing and allowance of costs, including attorneys' fees, in the court's discretion, in cases where the foreign defendant prevails.

(Italics ours.) *Andersen,* at 868.

Our decisions in *O'Connell* and in *Chemical Bank v. WPPSS,* 104 Wn.2d 98, 104, 702 P.2d 128 (1985) have similar effect. In both cases we justified a conclusion that fees awards were not warranted by observing: "This is not a case where the defendant has had only minimum contacts

with the state in which he is asked to defend an action."
*O'Connell,* at 607; *see also Chemical Bank v. WPPSS,*
*supra* at 104. By contrast, a foreign defendant over whom
long–arm jurisdiction is improperly asserted determinedly
has had *less* than minimal contacts with the state. As a
direct result of the plaintiff's resort to the long–arm stat-
ute, however, the defendant suddenly finds himself in need
of Washington counsel and responsible for abiding Wash-
ington laws and court rules—"burdens and inconveniences
which would have been avoided had the trial been con-
ducted at the place of his domicile". *O'Connell,* at 606. This
defendant thus presents the paradigm case for an award of
fees under RCW 4.28.185(5). *Cf.* Comment, *The Award of
Attorney's Fees to Prevailing Defendants Under the
Washington Long Arm Statute,* 63 Wash. L. Rev. 125, 140
(1988).

### III

As discussed above, we believe the plain language of the
long–arm statute's fees award provision, as well as the cases
in which we have applied and interpreted that provision,
fully support our conclusion that the statute authorizes
trial courts to award attorney fees to defendants who pre-
vail jurisdictionally. We recognize, however, that the lan-
guage of some of our opinions might be construed to
suggest a different result. The following discussion is
offered in an effort to clarify these ambiguities.

### A

Our holding today might be seen as inconsistent with an
outdated doctrine expressed in *Thurston Cy. v. Scammell,*
7 Wash. 94, 34 P. 470 (1893). *Scammell* involved actions by
a county against its taxpayers to recover taxes owed. While
the suits were pending, the tax law pursuant to which they
had been brought was repealed. The trial court dismissed
the actions, holding that the repeal had removed its juris-
diction, and awarded costs to the defendants. This court
reversed the costs award, holding that "where an action is
dismissed for want of jurisdiction no costs can be awarded

to either party, unless expressly authorized by statute."
*Scammell,* at 95. The court deemed inapplicable a statute
authorizing costs awards to prevailing parties (presently
codified at RCW 4.84.030), noting that "[w]hen the law was
repealed upon which the action was founded neither party
had 'prevailed,' for the reason that no matter either of law
or fact had been determined." *Scammell,* at 96.

On the present issue of whether an award of fees may be
made to a foreign defendant who obtains a dismissal for
want of jurisdiction in an action under the long–arm stat-
ute, *Scammell* supports an affirmative result. Such a
defendant, as we have explained above, "prevails in the
action" within the meaning of the long–arm statute's fees
provision. Thus, an award of costs and fees to such a
defendant, being "expressly authorized by statute", fits
within the exception to *Scammell*'s rule.

*Scammell* has been misinterpreted, however, to say that
costs are never recoverable in this state upon dismissals for
want of jurisdiction. *See* 20 Am. Jur. 2d *Costs* § 19 (1965);
Annot., *Dismissal of Plaintiff's Action as Entitling
Defendant To Recover Attorneys' Fees or Costs as "Pre-
vailing Party" or "Successful Party",* 66 A.L.R.3d 1087,
1091 n.10 (1975).[3] Such was the rule in federal courts at
the time *Scammell* was decided, the theory being that "the
court, in such cases, has no more authority to render judg-
ment for costs than for relief." *Scammell,* at 95. But nei-
ther this rule nor its theory won the unquestioning
acceptance of the *Scammell* court. Rather, anticipating to
some extent the present case, the court cautioned that
"cases might arise where a dismissal for want of jurisdiction
might be proper and where [a statute authorizing a costs
award] would be applicable, and would, of course, be deci-
sive." *Scammell,* at 96.

---

[3]*See also Andersen v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 867–68, 505
P.2d 790 (1973), where the court indicated some uncertainty about whether
*Scammell* would prohibit costs awards in long–arm actions dismissed for want of
jurisdiction.

Now, nearly 100 years later, the rule and reasoning of the old federal courts' approach have long been discarded. *See In re Northern Ind. Oil Co.*, 192 F.2d 139, 141–42 (7th Cir. 1951). The better approach has been recognized to be that the court, having jurisdiction to determine its jurisdiction, has the power to award costs even if jurisdiction is found to be wanting. *Cf. Mansfield, C. & L.M. Ry. v. Swan*, 111 U.S. 379, 387, 28 L. Ed. 462, 4 S. Ct. 510 (1884). We do not understand *Scammell* to require a different result.

B

■ Some difficulties have arisen in cases interpreting RCW 4.28.185(5) as a result of attempts to determine fees awards according to the rather unreproachable standard of "fair play and substantial justice". Owing to its redundancy with the constitutional standard for personal jurisdiction, as well as to its inherently subjective nature, "fair play and substantial justice" has proven neither useful nor sensible for that purpose. We thus now hold that "fair play and substantial justice" no longer should be invoked to determine appropriate fees awards under the long–arm statute.

"Fair play and substantial justice" first entered the jurisprudence of RCW 4.28.185(5) in the decision by the Court of Appeals in *Mahnkey v. King*, 5 Wn. App. 555, 559, 489 P.2d 361, 51 A.L.R.3d 1331 (1971). In several cases, we have reiterated *Mahnkey*'s conclusion that the long–arm statute's fees provision "was intended to bring the statute within the traditional notions of 'fair play and substantial justice.'" *See State v. O'Connell*, 84 Wn.2d 602, 605–06, 528 P.2d 988 (1974); *Marketing Unlimited, Inc. v. Jefferson Chem. Co.*, 90 Wn.2d 410, 412, 583 P.2d 630 (1978); *Chemical Bank v. WPPSS*, 104 Wn.2d 98, 103–04, 702 P.2d 128 (1985). A careful reading of *Mahnkey*, however, raises significant doubt that this is, as was said in *State v. O'Connell, supra* at 606, "a reasonable interpretation of the legislative intent." Furthermore, the identity of the "fair

play and substantial justice" standard with the constitutional test of jurisdiction creates a curious analytic redundancy, rendering fees awards decisions in some cases paradoxical, and in others seemingly inescapable.

The question before the Court of Appeals in *Mahnkey* was whether RCW 4.28.185(5) violates constitutional equal protection guaranties by allowing fees awards only to nonresident defendants. The Court of Appeals upheld the provision on the basis that the distinction drawn between resident and nonresident defendants had not been demonstrated to be unreasonable or arbitrary. To the contrary, the court explained, fees awards are appropriately authorized for nonresident defendants to compensate for the extra burdens they face when litigating in Washington.

On its own terms, the *Mahnkey* opinion would have been complete without further elaboration. However, the opinion continued:

> The reason for delineating out–of–state defendants as a specific class is amply set forth in [*Omstead v. Brader Heaters, Inc.*, 5 Wn. App. 258, 487 P.2d 234 (1971), *adopted in* 80 Wn.2d 720, 497 P.2d 1310 (1972)]. The action by the legislature was intended to bring the statute within the traditional notions of "fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945).

*Mahnkey,* at 559.

*Mahnkey*'s claim that the Legislature intended the fees provision to conform the statute to constitutional standards for long–arm jurisdiction is insupportable. First, as the *Mahnkey* court itself acknowledged, *Mahnkey,* at 559, an authorization of fees awards is not necessary for this purpose. Second, *Omstead v. Brader Heaters, Inc.,* 5 Wn. App. 258, 487 P.2d 234 (1971), the sole source of *Mahnkey*'s statutory interpretation, said nothing about the legislative intent underlying the fees award statute. The Court of Appeals comment in *Omstead* that a foreign defendant's burdens of litigating in Washington are eased somewhat by

the fees provision, *see Omstead,* at 271, was merely an observation made in the course of balancing equities to determine the question of jurisdiction. *See also Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 725, 504 P.2d 782 (1972) (making the same observation, for the same purpose). The court in *Omstead* had no occasion to interpret or apply RCW 4.28.185(5).

"Fair play and substantial justice" is unsuitable not only as an expression of the legislative intent underlying the fees award statute, but also as a standard for determining or reviewing awards in particular cases. Applying the standard literally, fees awards would never be necessary when the assertion of long–arm jurisdiction is determined to be proper, for in such a situation it per force must have been established that the "assumption of jurisdiction . . . [does not offend] traditional notions of fair play and substantial justice". *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115–16, 381 P.2d 245 (1963); *see* Comment, *The Award of Attorney's Fees to Prevailing Defendants Under the Washington Long Arm Statute,* 63 Wash. L. Rev. 137–38 (1988). On the other hand, a fees award would seem always to be appropriate under this standard in the converse situation where jurisdiction is held wanting because requiring the defendant to litigate in this state would offend fair play and substantial justice.

Our cases have not applied the "fair play and substantial justice" standard in these ways, and to that extent the standard, inappropriate in the first instance, has become no standard at all. Rather, awards of attorney fees under RCW 4.28.185(5) have become all–or–nothing propositions, with trial court decisions accorded unquestioned deference so long as lip service has been paid to the notions of fair play and substantial justice.

Illustrative of both ends of the spectrum of deference are the decisions in *Chemical Bank v. WPPSS, supra,* and *Marketing Unlimited, Inc. v. Jefferson Chem. Co., supra.*

In *Chemical Bank,* the trial court denied a foreign defendant's request for an award of fees, noting that any excess burdens the exercise of long–arm jurisdiction might have imposed on the defendant "were not of such severity as to warrant the court in concluding that, without the award of attorney fees, traditional notions of fair play and substantial justice would be violated." *Chemical Bank,* at 103. Affirming, we emphasized that the defendants had had more than minimal contacts with the State, and thus that "the trial court appropriately exercised its discretion" in denying a fees award. *Chemical Bank,* at 104.

In *Marketing Unlimited,* rather than deny any award, the trial court made an overly generous one, 7 to 10 times the amount of the increased expense the foreign defendant had incurred as the result of long–arm jurisdiction. Again, we affirmed, noting that

[s]ince the court in this case exercised its discretion, applied the appropriate test, and specifically found that notions of fair play and substantial justice required awarding $7,120, an abuse of discretion is not indicated.

*Marketing Unlimited,* at 413.

Taken together, these rulings demonstrate that the conceptually almost boundless standard of "fair play and substantial justice", *cf. World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 313, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) (Marshall, J., dissenting), does not effectively guide trial courts in fairly administering the long–arm statute's fees provision, and insulates trial court rulings on fees requests from meaningful review.[4] For these reasons, we now abandon "fair play and substantial justice" as a standard for assessing fees awards under RCW 4.28.185(5).

---

[4]See also the following cases upholding trial court fees awards determinations: *Osborne v. Spokane,* 48 Wn. App. 296, 738 P.2d 1072 (1987); *Jet Boats, Inc. v. Puget Sound Nat'l Bank,* 44 Wn. App. 32, 44–46, 721 P.2d 18, *review denied,* 106 Wn.2d 1017 (1986); *S.S. Kresge Co. v. Port of Longview,* 18 Wn. App. 805, 815, 573 P.2d 1336 (1977), *review granted,* 90 Wn.2d 1004, *dismissed,* October 4 (1978). We are aware of no appellate decision in this state overturning, for abuse of discretion, a fees award made under authority of RCW 4.28.185(5).

## IV

Having held that RCW 4.28.185(5) authorizes an award of fees to Dwight's, we must next consider whether the award made was appropriate under the statute.[5]

The fees award provision authorizes an award of "*a reasonable amount* to be fixed by the court as attorneys' fees." (Italics ours.) Unfortunately, our cases have offered almost no meaningful guidance on what RCW 4.28.185(5) means by "reasonable" fees. As a result of our rather unthinking commitment to "fair play and substantial justice" as a standard for reviewing trial court awards, the scope of awards is insensibly limitless. Our inability to agree on a method for calculating fees awards, compare, e.g., *Dailey v. Testone*, 72 Wn.2d 662, 664, 435 P.2d 24 (1967) and *Beeson v. Atlantic–Richfield Co.*, 88 Wn.2d 499, 511–12, 563 P.2d 822 (1977) *with Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593–602, 675 P.2d 193 (1983) (plurality) and *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 64–66, 738 P.2d 665 (1987), also leaves the appropriate size of awards an uncertainty.

## A

■ We address first the proper scope of fees awards. We find the following principles appropriate as basic guidelines to a determination of what fees defendants may recoup under RCW 4.28.185(5): First, a prevailing defendant should not recover more than an amount necessary to compensate him for the added litigative burdens resulting from the plaintiff's use of the long–arm statute. Second, where the defendant prevails by obtaining a ruling that jurisdiction under the long–arm statute does not properly lie, his award should not exceed the amount in attorney fees he would have incurred had he presented his jurisdictional defense as soon as the grounds for the defense became available to him.

---

[5]Kirby's answer to Dwight's' petition for review squarely raises the question of the reasonableness of Dwight's' award.

The first restriction finds both support and opposition in our case law. *State v. O'Connell,* 84 Wn.2d 602, 528 P.2d 988 (1974) is supportive. There, the court denied a request under RCW 4.28.185(5) for fees incurred on appeal because assertion of long–arm jurisdiction had not subjected the defendants to added litigation expenses or burdens.

> There can be no question but that the Aliotos have been subjected to a lengthy and expensive litigation; but there is nothing to indicate that these factors were affected by the location of the forum. Had the trial been conducted in the Aliotos' domicile, the expense may well have been greater, since most of the witnesses resided in Washington and the evidence was located here. There is actually no serious contention that the defense of the suit was more expensive in the state of Washington than it would have been in California.

*O'Connell,* at 606–07.

Opposed to the principle that a long–arm fees award should be limited to the extra burdens imposed as a result of the exercise of long–arm jurisdiction is the decision in *Marketing Unlimited, Inc. v. Jefferson Chem. Co.,* 90 Wn.2d 410, 583 P.2d 630 (1978). In that case, the trial court granted the request of a prevailing foreign defendant for an award of the total amount of his fees, notwithstanding that only 10 to 15 percent of that amount was attributable to the exercise of long–arm jurisdiction. Affirming, this court rejected the plaintiff's contention that the defendant's award should encompass only the extra expense he incurred to litigate the case in Washington, rather than in his home state of Texas.

We are no longer able to support the holding of *Marketing Unlimited,* and thus now overrule it. In essence, what the court there held was that fees awards are unappealable so long as the trial court making the award incants the phrase "fair play and substantial justice":

> Since the court in this case exercised its discretion, applied the appropriate test, and specifically found that notions of fair play and substantial justice required awarding $7,120, an abuse of discretion is not indicated.

*Marketing Unlimited,* at 413. As explained above, however, the "fair play and substantial justice" standard is ill suited

for determining reasonable fees awards under RCW 4.28-.185(5), leaving fees awards made under the long–arm statute unrestrained and unreviewable.

Limiting awards to the increase in fees caused by exercise of long–arm jurisdiction, by contrast, meaningfully enforces the statutory restriction of awards to "a reasonable amount". One obvious purpose of the long–arm statute's fees provision is to compensate defendants for the added expense caused them by plaintiffs' assertions of long–arm jurisdiction.[6] *See State v. O'Connell, supra* at 606. Permitting awards in amounts exceeding the defendant's extra long–arm related expenses does nothing to further this policy. Thus, such excessive awards are not "reasonable" and should not be permitted under the statute. *Cf. Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 743–44, 733 P.2d 208 (1987) (fees awards under Consumer Protection Act (CPA) must be limited to fees generated by work on CPA aspects of suit); *Boeing Co. v. Sierracin Corp., supra* at 65–66 (same with respect to awards under Uniform Trade Secrets Act).

The second principle articulated above seeks to curb litigative excess that might unnecessarily inflate fees awards. Foreign defendants brought into Washington courts under the long–arm statute may present a jurisdictional defense even before they file their answer. *See* CR 12(b)(2). In cases where the court's lack of jurisdiction may be simply shown, therefore, the burden the long–arm statute places on the foreign defendant can be minimal. Even when the jurisdictional question is closer—as it appears to be in this case—the jurisdictional defense often can be investigated and presented before undertaking substantial effort on trial preparation. Fees awards to defendants who prevail jurisdictionally thus should reflect only that amount of lawyering that reasonably should have been necessary to prevail

---

[6]Another is to deter plaintiffs from invoking long–arm jurisdiction as means to harass foreign defendants. *See Werner v. Werner,* 84 Wn.2d 360, 372, 526 P.2d 370 (1974); *State v. O'Connell, supra* at 606.

on the jurisdictional defense.[7] *Cf. Nordstrom,* at 744 (fees awards should not compensate unnecessary efforts); *see also* Comment, *The Award of Attorney's Fees to Prevailing Defendants Under the Washington Long Arm Statute,* 63 Wash. L. Rev. 125, 139–40 (1988).

In this case, the trial court expressly declined to exclude from Dwight's' award fees that would have been avoided had Dwight's' motion to dismiss been brought as soon as the jurisdictional defense reasonably became apparent. The trial court also apparently did not limit Dwight's' award to the amount of extra litigative effort Dwight's was forced to undertake as a result of Kirby's assertion of long–arm jurisdiction. For these reasons, we cannot uphold the award, and order that the case be remanded to the trial court for a redetermination of an appropriate award in light of the above–described principles.

### B

On remand, if the trial court determines that Dwight's is entitled to an award of fees, an issue may be raised as to the proper method for calculating that award. We have not previously explored this question in the context of RCW 4.28.185(5), and we have failed to settle on a single definition of the concept of reasonableness for purposes of other fees statutes. Principally two analytic approaches have currency in our decisions. *See Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 15, 721 P.2d 1 (1986). One approach constitutes a reasonable fee from a list of factors, including

---

[7]This is not to say that the costs of trial preparation never can be recovered under RCW 4.28.185(5) when the defendant ultimately prevails on jurisdictional grounds. In some cases, proper presentation of the jurisdictional defense may be delayed by its complexity, or by other expedients, such as the necessity of defending against plaintiff's pretrial motions and requests for discovery. Additional work may be necessary as well while the parties await the trial court's ruling on the defendant's motion, or appellate action to correct an erroneous ruling. In every case, the court awarding fees must make a sound determination of the amount necessary to compensate the defendant for the burdens imposed on him by the assertion of long–arm jurisdiction.

the time expended, the difficulty of the questions involved, the skill required, customary charges of other attorneys, the amount involved, the benefit resulting to the client, the contingency or certainty in collecting the fee and the character of the employment.

*Dailey v. Testone,* 72 Wn.2d 662, 664, 435 P.2d 24 (1967); *see Beeson v. Atlantic–Richfield Co.,* 88 Wn.2d 499, 511–12, 563 P.2d 822 (1977); *Wolfe v. Morgan,* 11 Wn. App. 738, 744–45, 524 P.2d 927 (1974); *Baldwin v. National Safe Depository Corp.,* 40 Wn. App. 69, 74, 697 P.2d 587, *review denied,* 104 Wn.2d 1002 (1985); *see also* RPC 1.5(a). The other approach calculates a "lodestar" award figure by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter, and permits adjustments to the lodestar where appropriate, taking into account essentially those factors that are considered under the above–described "factors" approach. *See Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 593–602, 675 P.2d 193 (1983) (plurality); *Boeing Co. v. Sierracin Corp.,* 108 Wn.2d 38, 64–66, 738 P.2d 665 (1987).

For purposes of determining reasonable fees awards under RCW 4.28.185(5), we favor the lodestar approach. We do not reject entirely the factors approach, however, but rather expect that its various considerations will be subsumed within the adjusted lodestar amount. *See Pennsylvania v. Delaware Vly. Citizens' Coun. for Clean Air,* 478 U.S. 546, 561–66, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986); Comment, 63 Wash. L. Rev. at 135–36.

## V

In sum, we hold that RCW 4.28.185(5) authorizes an award of attorney fees when a foreign defendant, sued under the long–arm statute, obtains a dismissal for want of personal jurisdiction. We reverse the contrary holding of the Court of Appeals and order that the case be remanded to the trial court so that an appropriate award may be determined in accordance with the principles we have herein articulated. On remand, the trial court is directed

also to determine what, if any, award Dwight's is entitled to for its appellate efforts. RAP 18.1(e).

CALLOW, C.J., UTTER and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

BRACHTENBACH, J. (concurring in part, dissenting in part)—I concur in the well–reasoned majority opinion but dissent from the disposition to the extent that it permits the award of attorney fees in the Court of Appeals.

I. (DISSENT) Attorney Fees in the Court of Appeals.

The Court of Appeals denied defendant Dwight's attorney fees on a ground which we now reverse, but, additionally, held that defendant would not be entitled to attorney fees in any event because of its failure to comply with RAP 18.1. I would give deference to that ruling by the Court of Appeals because it is correct. On remand I would exclude any award by the trial court for the $33,919.42 sought by Dwight's in the Court of Appeals.

II. (CONCURRENCE) Limitations on Attorney Fees.

I concur with the majority, except as indicated, but write separately to express my conviction of the extreme importance of the two limitations on awards of attorney fees set forth by the majority at page 120. These limitations are essential; without them plaintiffs may forgo pursuing otherwise valid claims for fear of substantial and unpredictable fees. To not so limit such fees would thwart the legislative intent to allow full exercise of state jurisdiction to the extent allowed by due process.

This case is a perfect illustration of an outrageous abuse by a defendant which chose to escalate a simple jurisdictional issue into a predatory legal foray.

The transaction underlying this suit is factually uncomplicated. The Spokane distributor for Kirby called Dwight's in Texas and offered to sell 120 vacuum cleaners; Dwight's accepted. The president and owner of Dwight's came to Spokane, with two cashier's checks issued by a Texas bank.

One check paid off the security interest of a Spokane bank, the other paid Weeks' "profit." The bank authorized release of the vacuum cleaners from a commercial warehouse to Weeks or her designee. At the warehouse Dwight's affixed shipping labels for transportation of the vacuum cleaners to Texas. Kirby notified the warehouse of a claimed interest in the vacuum cleaners; the warehouse refused delivery absent a court order.

These facts are mainly uncontested, yet Dwight's declaration of war leads to an incredible claim of $180,913.79 in fees and costs. Dwight's was awarded $116,785.54 in the trial court and seeks $33,919.42 in the Court of Appeals and $30,206.83 in this court.

This action was filed in July 1986; in October 1986, Dwight's filed an 88–paragraph, 21–page answer, including one paragraph alleging lack of jurisdiction. Not until the second trial date (the first trial date was stricken on Dwight's motion), February 9, 1987, did Dwight's file a motion to dismiss for lack of jurisdiction.

This single transaction took place over several days, yet this uncomplicated set of facts has produced 410 pages of clerk's papers and a 200–plus–page transcript. Dwight's Texas counsel claims in the trial court, $11,125 in fees for taking depositions, $14,375 for briefing and $11,875 in preparation for *trial*. These figures represent only minimum amounts, limited to those where the affidavit clearly identifies those categories. Incredibly, Texas counsel sought at least another $14,400 for briefing on appeal to the Court of Appeals *solely* on the issue of jurisdiction. Likewise, I am astonished at a claim of at least an additional $8,650 for briefing on the single–issue petition for review even though no new citations or theories arose from the Court of Appeals decision. These claims are exorbitant. Defendant could have and should have asserted its jurisdictional issue by motion. CR 12(b)(2). The operative facts could have been presented by affidavit as indeed they were eventually in a 10–page affidavit by the president of defendant.

I agree completely with Justice Durham's statement that "Fees awards to defendants who prevail jurisdictionally thus should reflect only that amount of lawyering that reasonably should have been necessary to prevail on the jurisdictional defense." Majority, at 122. Defendant's claims herein warrant strict scrutiny.

DOLLIVER, DORE, and ANDERSEN, JJ., concur with BRACHTENBACH, J.