# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| SANDHU FARM INC., a Washington corporation, | No. 83866-1-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| A&P FRUIT GROWERS LTD., a British Columbia corporation, | |
| Respondent. | |

MANN, J. — In Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., ___ U.S. ___, 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021), the United States Supreme Court recently addressed and clarified the requirements for personal jurisdiction over a nonresident entity. Under Ford, the defendant must purposefully avail itself of the privilege of conducting activities within the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. 141 S. Ct. at 1024-25 (emphasis added).

Sandhu Farm Inc. (Sandhu), a Washington corporation, sued A&P Fruit Growers Ltd. (A&P), a British Columbia corporation, for breach of contract in Skagit County,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83866-1-I/2

Washington. Sandhu appeals the trial court's decision dismissing its case for lack of personal jurisdiction, and alternatively, for forum non conveniens. We reverse the trial court's decision on personal jurisdiction but affirm the dismissal of the case for forum non conveniens.

I.

Sandhu is incorporated in Washington with its principal place of business, a blueberry farm, in Skagit County, Washington. A&P is a Canadian corporation with its headquarters and principal place of business in Abbotsford, British Columbia, Canada.

Sandhu incorporated in 2004 and began operations soon after. Historically, Sandhu sold its blueberries to a local processor. But because the local processor's coolers would fill, Sandhu would need to delay delivery causing a loss of freshness and value. Sandhu began looking for a new processor and began working with A&P in 2010.

Sandhu contacts A&P each harvest season, the parties negotiate a price, and then Sandhu delivers its blueberries directly to A&P's processing facility in Abbotsford, Canada. A&P then packs, processes, and resells the blueberries. Some blueberries are sold in Washington to Washington buyers.

The owner of A&P, Sukhminder Bath, also owns Sun Berries, a berry farm in Lynden, Washington. The Sun Berries property includes both the farm and a receiving facility for A&P. Bath visits the Sun Berries property every two to three days to attend to the farming operation. Sandhu made one delivery to the Sun Berries property. After that, Sandhu delivered its blueberries directly to A&P's processing facility in Canada.

-2-

No. 83866-1-I/3

A&P does receive blueberries from other Washington farmers at the Sun Berries property.

A&P does not solicit farmers in Washington, instead, farmers like Sandhu approach A&P to sell their fruit. Bath visits one or two U.S. farmers each year on behalf of A&P, but this is often just to say hello. A&P has been to Sandhu one time to look at the farm. None of the other employees of A&P, all Canadian, come into the United States to do business on behalf of A&P. Any meetings between Sandhu and A&P occur at A&P's processing plant in Canada.

Sandhu sued A&P for breach of contract, and violation of the United Nations Convention on the International Sale of Goods, in February 2021. Sandhu alleged that it had not been paid the full amount owed for blueberry transactions in 2018 and 2019. A&P raised several affirmative defenses, including lack of personal jurisdiction in its answer.

Sandhu unsuccessfully moved for partial summary judgment on the issue of personal jurisdiction. A&P then moved to dismiss for lack of personal jurisdiction and forum non conveniens. On March 4, 2022, the trial court granted A&P's motion and dismissed Sandhu's complaint with prejudice. Sandhu appeals.

II.

Sandhu contends the trial court erred by dismissing its claims for lack of personal jurisdiction over A&P. It argues that Washington courts have jurisdiction over A&P given A&P's significant and continuous activities in Washington. We agree.

We review a trial court's dismissal for lack of personal jurisdiction de novo. State v. LG Elecs., Inc, 186 Wn.2d 169, 176, 375 P.3d 1035 (2016). An out-of-state

No. 83866-1-I/4

defendant must have some minimum contacts with the state so that personal jurisdiction will not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

"A court's exercise of personal jurisdiction over a nonresident defendant requires compliance with both the relevant state long-arm statute and the Fourteenth Amendment's due process clause." Downing v. Losvar, 21 Wn. App. 2d 635, 654, 507 P.3d 894 (2022) (citing Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)). Washington's "long-arm" statute permits jurisdiction over:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
> (a) The transaction of any business within this state.

RCW 4.28.185. The Washington Supreme Court has consistently held that the state long-arm statute permits jurisdiction over foreign corporations to the extent permitted by the due process clause of the United States Constitution. Downing, 21 Wn. App. 2d at 654; Noll v. Am. Biltrite, Inc., 188 Wn.2d 402, 411, 395 P.3d 1021 (2017); Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 766-67, 783 P.2d 78 (1989). The due process clause of the Fourteenth Amendment limits the power of a state court to assert personal jurisdiction over nonresidents of the state. Bristol-Myers Squibb Co. v. Superior Ct., ___ U.S. ___, 137 S. Ct. 1773, 1779, 198 L. Ed. 2d 395 (2017). "Because a state court's assertion of jurisdiction exposes defendants to the state's coercive power, personal jurisdiction falls within the parameters of the clause." Downing, 21 Wn. App. 2d at 655.

-4-

No. 83866-1-I/5

Personal jurisdiction can arise in one of two ways: by general jurisdiction or specific jurisdiction. A state may exercise general jurisdiction when a defendant is "essentially at home" in the forum state. Ford, 141 S. Ct. at 1024 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). A corporation is at home in its place of incorporation and its principal place of business. Ford, 141 S. Ct. at 1024; Daimler, 571 U.S. at 137. The parties do not dispute that Washington courts do not have general jurisdiction over A&P because A&P is incorporated and has its principal place of business in Canada. Instead, we are concerned with specific jurisdiction.

Specific jurisdiction covers a narrower class of defendants "less intimately connected with a [s]tate, but only as to a narrower class of claims." Ford, 141 S. Ct. at 1024. The first element, the connection with a state, "often [goes] by the name "purposeful availment."

> The defendant . . . must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there.

Ford, 141 S. Ct. at 1024-25 (internal quotations and alterations omitted).

The second element, the class of claims, requires that the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the state. Ford, 141 S. Ct. at 1025 (quoting Bristol-Myers, 137 S. Ct. at 1780). In Ford, the Supreme Court clarified that the "arise out of or relate to" standard does not require direct causation between the plaintiff's suit and the defendant's activities.

-5-

No. 83866-1-I/6

> The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

Ford, 141 S. Ct. at 1026. Thus, under Ford, for specific jurisdiction, the defendant must (1) purposefully avail itself of the privilege of conducting activities within the forum state and (2) the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. 141 S. Ct. at 1024-25 (emphasis added).[1]

Ford concerned two consolidated cases involving accidents in Minnesota and Montana involving Ford vehicles. Ford argued that despite doing substantial business in both states, the exercise of personal jurisdiction over them was improper because the particular cars involved in the two cases were not first sold in the forum states or designed or manufactured there. Ford, 141 S. Ct. at 1022-23. Instead, the cars were brought to the forum states by later resales and relocations by consumers. Ford, 141 S. Ct. at 1023.

Under the first element, the purposefully avail element, Ford conceded that it did substantial business in Montana and Minnesota and actively sought to serve the market for automobiles and related products in those states. Ford, 141 S. Ct. at 1026.

Under the second element, Ford argued that its activities in the forum states did not sufficiently connect to the plaintiffs' claims. Ford, 141 S. Ct. at 1026. Ford argued the link must be causal, that jurisdiction attach only if the defendant's forum conduct

---

[1] Our Supreme Court has not addressed personal jurisdiction since Ford was decided. Because we look to federal law to determine personal jurisdiction, we review this case in light of Ford.

-6-

No. 83866-1-I/7

gave rise to the plaintiff's claim. Ford, 141 S. Ct. at 1026. Thus, Ford contended, specific jurisdiction would only attach where Ford sold the car in question or where Ford designed and manufactured the vehicle. Ford, 141 S. Ct. at 1026.

The Supreme Court disagreed, explaining that a strict causal relationship was not required:

> So the case is not over even if, as Ford argues, a causal test would put jurisdiction in only the States of first sale, manufacture, and design. A different State's courts may yet have jurisdiction, because of another "activity [or] occurrence" involving the defendant that takes place in the State.

Ford, 141 S. Ct. at 1024-25. The Court held that when a company like Ford serves a market for a product in the forum state and the product malfunctions there, specific jurisdiction attaches. Ford, 141 S. Ct. at 1027.

Addressing the first element under Ford, A&P argues that it has not purposefully availed itself of the privilege of conducting activities within Washington. But, A&P admits that it receives blueberries for A&P at Sun Berries farm and facility in Lynden, Washington and that it has been doing so for at least five years. Of the fifteen million pounds of blueberries it processes annually, A&P receives about four million pounds of blueberries from Sun Berries and other blueberry farmers in Washington. And, once processed, A&P sells its berries back to businesses in Washington State. A&P argues that these activities are unrelated to Sandhu. But, "[a] defendant need not have Ford's staggering number of contacts with the forum state to sustain the requirement of purposeful availment." Downing, 21 Wn. App. 2d at 668; LNS Enters. LLC v. Continental Motors, Inc., 22 F.4th 852, 861 (9th Cir. 2022). And here, A&P has entered into transactions with Sandhu, a Washington farm, for the past 10 years. Because

-7-

No. 83866-1-I/8

these contacts with Washington are A&P's own choice, not random or isolated, and part of their broader business, A&P has purposefully availed itself of conducting activities within Washington.

Addressing the second element under Ford, A&P makes a similar argument as Ford, asserting that its conduct in Washington did not give rise to Sandhu's claims against A&P. But causation is not required. Instead, the question is whether A&P has a sufficiently broad blueberry business that these transactions with Sandhu relate to A&P's blueberry business in Washington. It does.

Again, A&P purchases blueberries from Sun Berries, a separately owned business in Lynden, Washington. A&P receives blueberries from other Washington farmers at the Sun Berries farm and receiving station. At its Canadian facility, A&P processes four million pounds of blueberries annually from Washington farms. It then sells approximately the same amount back into Washington. It is also undisputed that Sandhu's blueberries are grown in Washington.

Sandhu, a resident corporation, alleged breach of contract claims against A&P for processing its blueberries during the 2018 and 2019 harvest. Thus, Sandhu's suit relates to A&P's contacts with Washington. For the reasons given, "the relationship among the defendant, the forum[s], and the litigation" is sufficient to support specific jurisdiction. Ford, 141 S. Ct. at 1032 (internal quotations omitted).

The trial court erred in dismissing Sandhu's claims against A&P for lack of personal jurisdiction.

No. 83866-1-I/9

III.

Because Sandhu's lawsuit against A&P should not have been dismissed for lack of personal jurisdiction, we address the trial court's decision dismissing Sandhu's case on the alternative grounds of forum non conveniens.[2] We conclude that the trial court did not abuse its discretion.

Under the doctrine of forum non conveniens, trial courts have "the discretionary power to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought in another forum." J.H. Baxter & Co. v. Cent. Nat'l Ins. Co. of Omaha, 105 Wn. App. 657, 661, 20 P.3d 967 (2001). A motion to dismiss for forum non conveniens requires a fact-specific analysis with numerous factors to be considered and weighed in the discretion of the trial court. J.H. Baxter, 105 Wn. App. at 662. Thus, we review decisions based on forum non conveniens for an abuse of discretion. J.H. Baxter, 105 Wn. App. at 661. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2016). "Rulings that are manifestly unreasonable or based on untenable grounds include those that are unsupported by the record or result from applying the wrong legal standard." Gilmore v. Jefferson County Pub. Transp. Benefit Area, 190 Wn.2d 483, 494, 415 P.3d 212 (2018). The reviewing court "may not find abuse of discretion simply because it would have decided the case differently—it must be convinced that no

---

[2] Sandhu argues that the trial court lacked authority to dismiss on forum non conveniens grounds after dismissing the case for lack of personal jurisdiction. We disagree. Issues of jurisdiction and inconvenient forum are often heard together. See Wash. Equip. Mfg. Co., Inc. v. Concrete Placing Co., Inc., 85 Wn. App. 240, 243, 248, 931 P.2d 170 (1997).

No. 83866-1-I/10

reasonable person would take the view adopted by the trial court." Gilmore, 190 Wn.2d at 494 (internal quotations omitted).

Generally, a "plaintiff has the original choice to file his or her complaint in any court of competent jurisdiction." Sales v. Weyerhaeuser Co., 163 Wn.2d 14, 19, 177 P.3d 1122 (2008). Under the doctrine of forum non conveniens, trial courts have "the discretionary power to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought in another forum." J.H. Baxter, 105 Wn. App. at 661. "Essentially, the doctrine limits the plaintiff's choice of forum to prevent him or her from 'inflicting upon [the defendant] expense or trouble not necessary to [the plaintiff's] own right to pursue his remedy.'" Sales, 163 Wn.2d at 20 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507-08, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).

In deciding on forum non conveniens, the trial court "must balance certain private and public factors that determine the convenience of litigation in the alternative forum as opposed to the host forum." Sales, 163 Wn.2d at 20. This balancing requires first that the trial court determine that an adequate alternative forum exists. Sales, 163 Wn.2d at 20; Klotz v. Dehkhoda, 134 Wn. App. 261, 265, 141 P.3d 67 (2006). "[A]n alternative forum is adequate so long as some relief, regardless how small, is available should the plaintiff prevail." Klotz, 134 Wn. App. at 265. An alternate forum is inadequate only if the remedy provided is so clearly inadequate or unsatisfactory that it is no remedy. Hill v. Jawanda Transp. Ltd., 96 Wn. App. 537, 541, 983 P.2d 666 (1999). Moreover, a plaintiff cannot defeat a motion to dismiss for forum non conveniens merely by showing that the substantive law is less favorable to the plaintiff than that of the present forum.

-10-

No. 83866-1-I/11

Vivendi S.A. v. T-Mobile, USA, Inc., 2008 WL 2345283, at *11 (W.D. Wash. June 5, 2008).

Here, the trial court found that B.C., Canada is an adequate alternate forum. The trial court found that Canada recognizes causes of action for breach of contract and, like the U.S., is a signatory to the United Nations Convention of the International Sale of Goods. Sandhu concedes that Canada provides an adequate alternative forum.

Sandhu argues that the trial court failed to conduct a particularized analysis of the dispute and thus the findings and conclusions on the private interest factors are not supported by substantial evidence. A&P argues that the private interest factors all favor Canada. We agree with A&P.

"[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Creative Tech., Ltd. v. Aztec Sys. Pte., Ltd., 61 F.3d 696, 699 (9th Cir. 1995) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)).

The private interest factors require trial courts to consider the convenience of litigation in the alternate forum. The private factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Sales, 163 Wn.2d at 20 (quoting Gulf Oil, 330 U.S. at 508).

The trial court found that the private interest factors weighed in favor of Canada. The court found:

No. 83866-1-I/12

> [A]ll of A&P and Sandhu Farm's records related to these transactions are located in Canada; the witnesses are located in Canada; the relevant "premises" for viewing is in Canada; and Canadian courts, not Washington courts, have the power to compel testimony of Canadian residents.

Sandhu first argues that this statement does not identify particular documents located in B.C. But, A&P is run exclusively out of its B.C. processing plant and Jagmohan Sandhu, manager and part owner of Sandhu Farm admitted during his deposition that he keeps the records from transactions with A&P at his home in B.C. Similarly, Sandhu next argues that the trial court failed to identify specific witnesses in Canada. But again, all of A&P's employees are in Canada. Also, all of Sandhu's owners, managers, incorporators, and board of directors live in Canada. Thus, it is irrelevant that these witnesses are not specified by name. Further, if necessary, Canadian courts provide a means of obtaining the attendance of uncooperative witnesses. See Hill, 96 Wn. App. at 545. Finally, A&P argued that a site visit may be necessary because the issue is whether the processing and grading of the blueberries was conducted appropriately. That process occurred at A&P's facility in B.C.

In addition, while this case was proceeding below, because of COVID-19, border crossings between Washington and Canada were severely restricted. While restrictions have since eased, it was proper for the trial court to consider this when determining the ease of access to witnesses and evidence.

Because the trial court appropriately weighed the private factors, we conclude the trial court did not abuse its discretion.

Sandhu next argues that the trial court did not appropriately weigh the public interest factors. A&P argues that the public interest factors also weigh in favor of

-12-

No. 83866-1-I/13

Canada. Because this court may affirm on any basis supported by the record, we agree with A&P. State v. Torres, 151 Wn. App. 378, 389, 212 P.3d 573 (2009).

The public interest factors to be considered are as follows:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Gulf Oil, 330 U.S. at 508-09.

The trial court considered the public interest factors, finding that they balanced in favor of litigation in Canada instead of Washington:

[T]he origin of this case (the price negotiation and the transactions) took place in Canada; and public policy would favor this case being in Canada as A&P did not avail itself of Washington law or protections.

While the trial court's findings on these factors is limited, the record supports the conclusion. Here, the origin of this price dispute claim stems from A&P processing the blueberries, determining their value, and reconciliation meetings between the parties all of which occurred in Canada. In addition, this is a case between residents of Canada, thus Canada has a local interest in this case. While Skagit County would also have an interest in this case because the blueberries were grown there, because all the parties reside in Canada, the local interest weighs in favor of Canada.

-13-

No. 83866-1-I/14

On balance, it was not error for the trial court to conclude that the factors weigh in favor of Canada.  Because the trial court's decision was not manifestly unfair, unreasonable, or untenable, we affirm.

We reverse the trial court's decision on personal jurisdiction but affirm the dismissal of the case for forum non conveniens.[3]

_Mann, J._

WE CONCUR:

_Bowman, J_          _Dwyer, J._

---

[3] A&P requests attorney fees under RAP 18.1 for defending this appeal.  A party may recover fees on appeal if the party was entitled to recover fees in the trial court.  Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001).  Washington's long-arm statute provides that courts may award attorney fees to defendants who prevail jurisdictionally.  RCW 4.28.185(5); Scott Fetzer Co., Kirby Co. Div. v. Weeks, 114 Wn.2d 109, 124, 786 P.2d 265 (1990).  Because we reverse the trial court's decision on personal jurisdiction, A&P is not entitled to attorney fees and costs incurred in this appeal.

-14-